Filed 10/10/14  In re Roman P. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re Roman P., a Person Coming Under the Juvenile Court Law | |
| NINA P.<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF DEL NORTE COUNTY,<br><br>        Respondent.<br><br>DEL NORTE COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>        Real Party in Interest. | A142790<br><br>(Del Norte County Super. Ct.  No. JVSQ 13-6015) |

Roman P. (minor), the subject of the dependency proceeding below, was born on October 3, 2005.  His mother, Nina P. (mother), petitions in propria persona for an extraordinary writ after the juvenile court's termination of reunification services to her regarding minor and scheduling of a hearing pursuant to Welfare and Institutions Code[1] section 366.26.  Mother contends the juvenile court committed several errors.  We find no errors and deny her petition.

---

        [1]  All of our statutory references are to the Welfare and Institutions Code unless otherwise stated.

1

# BACKGROUND

Minor was born in October 2005, the child of mother and Stephen P. (father). Mother later became romantically involved with James H., with whom she had a child, Robert H., who was born in January 2013. Thereafter, minor, mother, James H., and Robert H. resided together in Crescent City, California. Father resided in Texas.

## *The Dependency Petition*

On February 11, 2013, the Del Norte County Department of Health and Human Services (Department) filed a juvenile dependency petition regarding minor pursuant to section 300. It alleged pursuant to section 300, subdivision (b) that minor suffered, or there was a substantial risk that he would suffer, serious physical harm or illness as a result of his parents' failure to protect him. Mother and James H. allegedly had a substance abuse problem that impaired their ability to care for minor, had a "domestically volatile relationship," and had made death threats to James H.'s mother; James H. had slapped minor in the face and hit him in the arm; and father did not have an existing relationship with minor.

The Department also alleged pursuant to section 300, subdivision (j) that there was a substantial risk that minor would be abused or neglected based on mother's and James H.'s abuse and neglect of their infant son, minor's half brother, Robert H. Mother and James H. allegedly had left Robert H., approximately one month old when the petition was filed, in the care of his paternal grandmother, who observed that Robert H. was having difficulty breathing and obtained emergency medical care for him. He was diagnosed as having "respiratory syncytial virus." The parents had neglected to recognize Robert H.'s life-threatening symptoms and seek emergency medical services for him.

In a February 2013 detention report, the Department further reported that on February 6, 2013, mother and James H. left Robert H. with his paternal grandmother, Sheila H. They told her they could not console the baby. Sheila H. noticed that Robert H. had a blue mouth, blue fingers, and appeared to be in distress. She took him to

a hospital emergency room, where he was hospitalized with respiratory syncytial virus. Hospital staff were concerned that they had a difficult time waking up mother and James H. in order for them to provide care for Robert H. in the hospital.

On or about February 8, 2013, the reporting social worker met with minor at the family's home. She noticed a strong smell of marijuana when she entered the home, but its occupants denied recent use. The social worker contacted mother, who allowed the removal of minor to the home of Sheila H. and her significant other, Tony C. The Department removed minor in part because it believed, based on Sheila H.'s report of certain comments by James H., that he and mother intended to soon flee with both children.

The Department further reported that minor said he did not think mother and James H. liked him very much. He had received spankings from mother and been slapped by James H. in the face and hand. He did not feel safe with them or with Sheila H. and Tony C. Mother and James H. always argued and minor thought they smoked marijuana.

The juvenile court ordered that the children be detained and set a jurisdictional hearing. The court also ordered the Department to conduct random drug screens and monitoring, perform substance abuse assessment, and provide any recommended treatment for mother and James H.

### The Court's Jurisdiction Ruling

In its March 2013 jurisdiction report, the Department reported that the children had been placed in a licensed foster home. Mother and James H. initially denied any substance abuse, then admitted to marijuana use. Mother said she "took about 4–5 hits off a pipe daily." In their initial drug test in February 2013, each tested positive for methamphetamine and marijuana. They refused to participate in another random test later that same month.

After hearing, the court, as indicated in a corrected minute order dated March 15, 2013, found the petition allegations to be true, except that it did not find domestic

violence had occurred between mother and James H. It adopted the findings and order set forth in the Department's report and scheduled a disposition hearing.

### *The Court's Disposition Ruling*

The Department submitted a March 2013 disposition report and recommended case plan to the court. It reported that minor was in second grade, working with his foster parents to catch up on his schoolwork, in good physical health, and participating in counseling services.

Mother and James H. had tested positive for methamphetamine on at least two occasions. The Department had concerns that mother was not in a position to address her substance abuse problems and remained fixated on having the children returned to her care as soon as possible, rather than pursuing and completing services that would address long-term issues. Mother had agreed to comply with the services provided by the Department, but in fact had not complied, except for her participation in one drug test.

The Department also was concerned about mother's lack of attachment to minor. Mother had missed nine of her weekly visits with minor and did not want to visit with him alone.

Also, mother initially denied that James H. had physically abused her, but later admitted that he had bruised her forearm and became physically aggressive during fights. Sheila H. told the Department that James H. was verbally abusive to mother and minor.

Father had expressed a desire to have minor placed with him in Texas. The Department, while recognizing that father was a nonoffending parent, thought "there are too many unknown factors to merit" the placement at that time.

The Department's recommended case plan included that mother be ordered to participate in an assessment for possible substance abuse and random drug testing, a mental health assessment, a peer counseling group regarding domestic violence and empowerment, and parenting education services.

At the March 29, 2013, disposition hearing, the court, as stated in a corrected minute order, continued the matter so that mother could meet with her counsel. It found

that mother had not engaged in the services or visits offered, and scheduled a six-month review hearing for September 2013.

On April 12, 2013, as stated in another corrected minute order, the court declared minor and Robert H. to be dependents of the court and adopted the findings and orders stated in the Department's disposition report. These orders included that mother and father receive reunification services and comply with the Department's recommended case plan.

### *The Six-Month Review*

In its September 2013 status review report, the Department stated that there were no concerns about minor's physical health, but he had been referred to a psychiatrist for bedwetting. He was developmentally on track and appeared to be more social and verbal about his wants and needs. Recently, he had begun wearing more feminine clothes because he liked them better and thought they were prettier, which was generating some curiosity from his fellow classmates. His foster parents had indicated that, in the event minor was unable to reunify with his parents, they would like to be considered for providing a permanent home to minor and his half brother, Robert H.

The Department indicated that mother had resisted participating in her case plan. She had continued to submit to random drug testing and was testing positive for marijuana. She contended that she smoked marijuana for her medical problems and that she had no intention of stopping. She did not think she needed treatment and did not want any related services.

Mother had been relatively consistent in her visits with minor overall, although she had missed several in a row without contacting the Department. The Department had concerns about her ability to focus on minor. Also, she had become frustrated with his choice of clothing.

Mother had been referred for a mental health assessment and it was recommended that she attend counseling services. Mother would not do so. In August 2013, she revealed that she had suicidal thoughts. Later that same month, she reported that her

5

clinician said she was no longer in need of services, but the clinician denied having said that and indicated mother was in need of services.

The Department also reported that mother appeared to have an "on-again/off-again" relationship with James H., although she had previously indicated that she was scared of him and his family. Mother had been referred to a domestic violence education program, but stopped attending after one session.

Mother's housing situation had been unstable, and she was homeless as of the date of the report. She had not secured stable employment. The Department had referred her to a program to help strengthen her job skills and ability to find employment. Mother had met with its coordinator, but did not complete the assigned work.

James H.'s location was unknown. He had been arrested for a battery incident involving his mother, which case was later dismissed without prejudice. He had not meaningfully participated in his case plan and stopped communicating with the Department in July 2013.

Father remained in Texas. He was having housing problems and had yet to meaningfully participate in his case plan. He had participated in some supervised weekly phone calls with minor, but not at all in July.

The Department concluded that "[d]ue to [mother's] lack of involvement in her court ordered case plan, her continuous positive drug tests, and her unstable housing situation, the Department is unable to confidentially [*sic*] state that both children[s'] health and safety would remain if returned to her care. Given that [mother] has yet to internally recognize the reasons why both her children were detained and has continued to state that 'this is not my fault,' the Department does not believe that she can make necessary decisions to avoid placing both her children in the same situation again and thus causing re-entry." It also could not recommend that minor be placed with father.

The Department also expressed concerns that mother would be able to make substantial progress on her case plan. It stated, "Despite the fact that [mother] loves and cares for her children, [mother] continues to seek out destructive and volatile

6

relationships, use controlled substances, and not address her mental health issues; all of which were the core issues that brought her children into the care of the Department."

The Department recommended that both children remain in out-of-home placement, that reunification services be terminated for mother and James H., and that reunification services be extended to father for an additional six months.

Court Appointed Special Advocates for Children (CASA) also submitted a report and an addendum report to the court. It recommended that the children remain in their placement with their foster parents and services continue to be provided for mother and father, but not for James H.

CASA reported that minor indicated he really wanted to live with mother, but not if James H. was in the home. He was doing well in school. His counselor advised that minor's interest in female clothing could be temporary or permanent, and that the adults in his life should give him "space" to pursue this interest while protecting him from intolerant reactions.

At an October 4, 2014, hearing, the court, finding that reasonable services had not been provided to father and recognizing the strong bond between minor and mother, ordered that reunification services for mother and father be continued. It also ordered mother to be immediately drug-tested and told her this would be the last six months of services that she would receive before a section 366.26 hearing was set.

### *Other Relevant Events in 2013*

The record indicates that at an October 2, 2013, hearing, the court found that there was not a substantial probability that Robert H. would be returned to mother's care and terminated family reunification services for both mother and James H. regarding Robert H.

In November 2013, the court adopted the Department's recommended revisions to mother's case plan regarding minor, to which mother agreed. These included that mother would establish and maintain her sobriety, demonstrate her willingness to maintain a drug-free lifestyle, have a substance abuse reassessment, follow any recommendations

7

from this reassessment, and continue to submit to random drug testing; participate in a mental health reassessment and any recommended treatment; and continue her domestic violence prevention classes. The court scheduled a 12-month review hearing for March 14, 2014.

### *The 12-Month Review*

In its March 2014 status review report, the Department stated that minor, who was then eight years old, remained in good health. He continued taking medication for a preexisting attention deficit hyperactivity disorder (ADHD). He was developmentally on track, continued to become more social and confident about expressing his wants and needs, and had no academic problems at school. However, his therapist was concerned about some of his behavior at home, which the therapist attributed to problematic, unsupervised visitations with mother. The visits were since being supervised at the Department's office. The Department expressed some concerns with mother's interactions with minor during these visitations, which included emotionally abusive comments. When mother was encouraged to use some of the skills and tools from her previously completed parenting education program, she said the class " 'was a joke' " and " 'was stupid.' "

Mother was found in a November 2013 reassessment to not be in need of further substance abuse treatment as long as she continued to test negatively for all controlled substances and participated in her mental health services. Mother continued to test negative for controlled substances, except that she tested positive for alcohol in January 2014. She was then reassessed, found to be a poly-substance abuser, and enrolled in a treatment program. The Department was informed by the program provider that mother at first refused to engage in services and was " 'openly hostile,' " then started to engage in services, and attended two group sessions.

Mother's participation in her domestic violence education program was steadily improving. She had attended all group sessions, except for two missed sessions in October 2013 and another two in December 2013.

Mother continued to have an unstable housing situation and was homeless as of the date of the report, although she expected to soon receive a Section 8 housing voucher. The Department found that, contrary to mother's representations, she had lived in a hostile home situation and was again involved in a domestically volatile relationship.

Father continued to reside in Texas. Although he had indicated his willingness to participate in a home study, he did not make himself available for it. His contact with minor was infrequent.

The Department concluded that mother was making "some progress" toward completing her case plan and was in a "better position and mentality" than she had been six months before. However, the Department continued to have "significant concerns" that she had yet to demonstrate the necessary behavioral changes to indicate that no further harm or danger would befall minor. It recommended that she and father receive six more months of reunification services.

Mother challenged some of the assertions in the Department's status review report in a sworn written statement to the court. She stated that she had not lived in a domestically volatile situation, had secured employment as an Avon representative in March 2014, and had found an apartment that she was going to move into in April 2014. She also denied that any counselor had observed dynamics between her and minor. She had not been informed that she was enrolled in a substance abuse treatment program; rather, she had been told that she was enrolled in the program because she had been diagnosed with ADHD and placed on Ritalin. Also, certain conversations she had with a social worker during her visits with minor were taken out of context.

After hearing on March 21, 2014, the court adopted the Department's findings and orders. The court stated its view that it was a very close case, and that it had a hard time making the finding that reunification was likely. It scheduled an 18-month review hearing for August 2014.

9

***The 18-Month Review, Termination of Reunification Services and
Scheduling of a Section 366.26 Hearing***

In its August 2014 status review report, the Department wrote that in April 2014, mother's substance abuse treatment service provider reported that mother was not testing, was disruptive in group sessions, and was in danger of being terminated from the program. Shortly thereafter, mother's mother was killed in an automobile accident. Mother was then compliant in her drug treatment program, but tested positive for alcohol. She then stopped attending services and submitting to drug testing, and was removed from the program. She missed 10 drug tests, as well as a hair follicle test scheduled by the Department after it received a report that she had resumed using methamphetamine. Mother told the Department the hair follicle test was "against her religion" after she learned it would show any drug use in the previous three months.

By May 2014, mother also had missed several counseling sessions and lost contact with her counselor. Mother later refused to consent to her counselor providing information about her case to the Department.

Mother also was terminated from her domestic violence education program after she had missed almost three months of the program. She continued to deny that her former partner, James H., had been physically and emotionally abusive to her and that minor had been affected by her domestically volatile relationships.

Mother's visitations with minor also continued to be problematic. She missed some visits, but resumed them in late July 2014. She had missed 21 out of a total of 134 scheduled visits.

Mother continued to remain homeless, but said she was working as a landscaper. The Department was skeptical that she had found stable employment based on other reports. The Department referred her to services, but she attended them inconsistently and had not met with her service coordinator since June 12, 2014.

Father had not followed through on certain aspects of his case plan. He continued to talk to minor by phone and Skype, but there were "often great lapses" in his doing so.

Minor's foster parents continued to express a desire to have minor become a permanent member of their family. They also were the proposed adoptive parents of Robert H. and expressed a strong desire to keep the brothers together.

The Department recommended that minor remain in his out-of-home placement, reunification services for both mother and father be terminated, and a section 366.26 hearing be scheduled to select and implement a permanent plan for minor. The Department thought that mother had failed to address the concerns that brought her son into the Department's custody, and had "exhibited minimal effort if any during the entire duration of her eighteen months of court ordered family reunification services." Despite the numerous services and referrals made available to her, she continued to exhibit "the same underlying behaviors . . . , specifically [mother's] inability to take any responsibility for her son's current child welfare dependency and her inability to make the necessary changes to her lifestyle to prevent any further harm occurring to her son. In addition, [mother] has given no thought or reflection to how her decision to continue to have inconsistent visits with [minor] is negatively impacting him and instead focuses on her feelings regarding her parental rights being terminated to her other child." Based on this information, the Department concluded that mother was "unable to maintain a drug free/domestic violence free lifestyle, even at the cost of her son."

CASA also submitted an August 2014 report to the court. Minor continued to say he wanted to live with his mother, but with much less enthusiasm and optimism. His second and third choices were his father and his foster parents. CASA also recommended that family reunification services be terminated for mother and father and a section 366.26 hearing be scheduled.

Mother, although given a copy of the Department's report by a social worker, did not attend the 18-month review hearing on August 15, 2014, nor contact her attorney. The parties submitted the matter based on the Department's report and recommendations, and the court adopted the Department's findings and orders. These included that return of minor to his parents would create a substantial risk of detriment to his safety, protection, or physical or emotional well-being; the Department had complied with the

11

approved case plan; there was clear and convincing evidence that reasonable services designed to aid mother and father to overcome the problems that led to minor's removal and continued custody were provided or offered; and mother and father had made insufficient progress in alleviating or mitigating the causes necessitating placement of minor in foster care. The court terminated reunification services for mother and father and scheduled a section 366.26 hearing for December 12, 2014.

### *The Present Proceeding*

Mother subsequently filed a petition for an extraordinary writ with this court seeking relief from the juvenile court's order. She contends that the court's order "was not supported by sufficient evidence to merit the setting of a hearing pursuant to [section 366.26], and services should not have been terminated to [mother]." She requests that we direct the lower court to vacate its order scheduling the section 366.26 hearing, continue reunification services and services for mother, and return custody of minor to her. The Department filed an opposition, which we deem to be a return pursuant to our order to show cause dated September 18, 2014. We declined to stay the section 366.26 hearing, scheduled for December 12, 2014, in that order as well.

### DISCUSSION

Mother contends that (1) she "did everything she could to comply with the program set out for her by the [c]ourt and the [Department], and that she made satisfactory progress toward reunification"; (2) "[s]ufficient . . . things were going on during the ongoing plan which indicate that there would [have] been success on mother's part to the benefit of both [p]etitioner and her son," but she was not given "adequate support by the social worker" to successfully complete her case plan and the Department did not comply with section 361.5; and (3) her reunification plan was not appropriate for her family based on the unique facts relating to that family, the Department did not clearly and convincingly provide reasonable services tailored to her family within the meaning of certain case law and section 366.21, subdivision (g)(1)(C), and the evidence was not so clear as to leave no substantial doubt.

12

Mother offers little evidentiary support for her petition. She refers to the reporter's transcript of the court's August 15, 2014, hearing, attaches to her petition a January 27, 2014, letter from the Housing Authority of the City of Crescent City indicating she was then at the top of the Section 8 housing waiting list, and also attaches a January 13, 2014, letter from a Department service provider stating that mother had reported that "her co-occurring disorders are stable and she is maintaining abstinence," and recommending that mother receive 12 more months of mental health services and drug and alcohol testing.

The Department opposes the petition. Its contentions include that mother waived any right to appeal the juvenile court's ruling by her failure to raise her issues first at the 18-month review hearing. Furthermore, the services offered were reasonable, the reunification plan was adequately tailored to mother's case, and the juvenile court did not abuse its discretion in finding that reasonable services had been offered to mother.

## I. *Waiver*

We agree with the Department that mother has waived her petition claims.

"[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court" and "[d]ependency matters are not exempt from this rule." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) Furthermore, as indicated by our independent research, a submittal on a social worker's recommendation dispels any challenge to and, in essence, endorses the court's issuance of the recommended findings and orders. Consequently, a parent who submits on a recommendation waives his or her right to contest the juvenile court's decision if it coincides with the social worker's recommendation. (*Steve J. v. Superior Court* (1995) 35 Cal.App.4th 798, 813; see *In re Richard K.* (1994) 25 Cal.App.4th 580, 589-590 [submitting to local child protective services agency's recommendation of removal of child, without introducing any evidence or offering any argument, waives issue of sufficiency of evidence to support such an order on appeal].)

Here, the juvenile court found that mother personally received the Department's status review report from a social worker. Nonetheless, she did not attend the 18-month review hearing in August 2014. Mother's counsel appeared on her behalf, raised no objections, offered no evidence, and submitted on the Department's report and recommendations. The court then adopted the Department's recommended findings and orders, including that minor's return to mother would create a substantial risk of detriment to his safety, protection, or physical or emotional well-being; clear and convincing evidence indicated that reasonable services designed to aid mother to overcome the problems that led to minor's removal and continued custody were provided or offered to mother; and mother had made insufficient progress in alleviating or mitigating these problems. These aspects of the record indicate that mother has waived her petition claims under the law we have discussed.

That said, we are not required to find waiver automatically. "[T]he appellate court has discretion to excuse a party's failure to properly raise an issue in a timely fashion [citation], in dependency proceedings." (*In re Wilford J.* (2005) 131 Cal.App.4th 742, 754.) However, "where the well-being of the child and stability of placement is of paramount importance, that discretion 'should be exercised rarely and only in cases presenting an important legal issue.' " (*Ibid.*, quoting *In re S.B.*, *supra*, at p. 1293.) We see no reason to deviate from this cautionary instruction here.

Accordingly, we find mother has waived her petition claims.

## II. *Mother Does Not Establish Any Error Occurred*

Even if we were to find that mother has not waived her petition claims, she has not met her burden of proving the juvenile court erred in any respect.

When offered, reunification services must be provided for at least six months unless earlier terminated for cause (§ 361.5, subd. (a)(2)), and for up to 24 months when it appears such extended services will result in the dependent child's return to the parent's custody (§ 361.5, subds. (a)(3), (4)). At an 18-month permanency review hearing, the juvenile court, after consideration of the admissible and relevant evidence, "shall order

14

the return of the child to the physical custody of his or her parent . . . unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent . . . would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child.  The social worker shall have the burden of establishing that detriment." (§ 366.22, subd. (a).)  "The failure of the parent . . . to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental." (*Ibid*.)  If the court does not order this return, it must order a section 366.26 hearing for a minor within 120 days. (*Ibid*.)  It shall also order termination of reunification services to the parent.  (*Ibid*.)[2]

"The court may not order that a hearing pursuant to Section 366.26 be held unless there is clear and convincing evidence that reasonable services have been provided or offered to the parent." (§ 366.21, subd. (g)(1)(C).)  For this burden to be met, it must be shown that the responsible social services provider "identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult." (*In re Riva M.* (1991) 235 Cal.App.3d 403, 414, quoted in *Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1426.)  In other words, there must be " 'a good faith effort' to provide reasonable services responding to the unique needs of each family." (*In re Monica C.* (1994) 31 Cal.App.4th 296, 306.)  The " 'evidence must be so clear as to leave no substantial doubt. It must be sufficiently strong to command the unhesitating assent of every reasonable mind.' " (*Ibid.*)

We review the juvenile court's findings pursuant to a substantial evidence standard of review.  (E.g., *In re E.D.* (2013) 217 Cal.App.4th 960, 966 [regarding a "substantial risk of detriment" finding]; *Amanda H. v. Superior Court* (2008) 166 Cal.App.4th 1340, 1346 [regarding a "reasonableness of services" finding].)

_____

**2** Section 366.22 also provides that the court may continue the case for an additional six months, but only in circumstances that do not apply to the present case. (See § 366.22, subd. (b).)

The record indicates that minor was removed from mother's custody soon after the Department discovered that mother's infant son and minor's half brother, Robert H., had suffered a life-threatening medical emergency as a result of the neglect of mother and her then-partner, James H. The Department's subsequent investigation and drug testing of mother and James H. indicated that their methamphetamine and marijuana use played a role in this neglect. The Department's investigation also indicated that minor lived in physically and emotionally abusive circumstances.

The record further indicates that thereafter, the Department repeatedly provided or offered services to mother to attempt to remedy the unique problems of mother's family over an 18-month period. These services included drug and alcohol testing, substance abuse treatment, mental health counseling, and domestic violence prevention, parenting education, and job skills services. Mother only sporadically participated in these services, abandoned them altogether in the months preceding the 18-month review hearing, and never came close to completing her case plan. Although mother's abandonment occurred after the sudden, accidental death of her own mother in 2014, she had sufficient time to recover from this loss and resume her participation, but did not. There also was substantial evidence that her relationship and interactions with minor throughout the 18-month period were problematic for minor's emotional well-being. There is ample evidence in the record that, contrary to mother's assertion, she was not doing everything she could to comply with her case plan, having success to the benefit of her and minor, or making satisfactory progress toward reunification, despite having a case plan tailored to the unique facts of her family and being provided reasonable services and adequate support by the Department.

Mother attaches to her petition letters from certain service providers that were written in January 2014 indicating she was then complying with certain aspects of her case plan. These documents were written during a relatively brief period when mother attempted to comply with her case plan, and before her abandonment of the services provided to her later that year. They do not establish error by the juvenile court.

16

In short, substantial evidence supports all of the juvenile court's rulings. We find no reason to disturb any aspect of them.

Given our conclusion, we do not address the Department's assertion that mother, rather than petition this court, should have brought a section 388 petition alleging changed circumstances in the court below.

## DISPOSITION

The petition for an extraordinary writ is denied on its merits. Our decision is final as to this court immediately. (Cal. Rules of Court, rule 8.490(b)(2)(A).)

_____
STEWART, J.

We concur.

_____
KLINE, P.J.

_____
RICHMAN, J.

17