Filed 7/9/13

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| In re E.D., a Person Coming Under the Juvenile Court Law. | C072238 |
| EL DORADO COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>R.D.,<br><br>        Defendant and Appellant. | (Super. Ct. No. SDP2011-0021) |

APPEAL from a judgment (order) of the Superior Court of El Dorado County, Thomas E. Warriner, Judge.  Reversed with directions.

Caitlin U. Christian, under appointment by the Court of Appeal, for Defendant and Appellant.

Edward L. Knapp, County Counsel, and Scott C. Starr, Deputy County Counsel, for Plaintiff and Respondent.

R.D. (father) appeals from the juvenile court's order refusing to return E.D. (minor) to his custody at the 12-month review hearing.  (Welf. & Inst. Code, §§ 366.21, subd. (f), 395.)  Respondent El Dorado County Department of Human Services (the Department) agrees that the minor should be returned to father.  We shall reverse.

1

## FACTUAL AND PROCEDURAL BACKGROUND

The minor, born in the summer of 2003, is the child of father and M.W. (mother). He has three half siblings: R.R., T.W., and M.D. Born in the spring of 2009, M.D. is father's child with his girlfriend, M.C. (father's girlfriend). Half siblings R.R. and T.W. have different fathers.

The minor was removed from mother's custody in 2009 because of her substance abuse problems and placed with father, but in June 2010 mother regained custody in family court after a domestic violence incident between father and father's girlfriend. Father was given supervised visitation; he attended the majority of his visits, which were "very appropriate."

In August 2011 the minor, R.R., and T.W. were removed from mother's custody because of a drug relapse, and the juvenile court assumed jurisdiction over them.

At disposition in October 2011 the juvenile court rejected the Department's recommendation that the minor be returned to father's care with a plan of family maintenance services.[1] The court ordered the minors placed in foster care and granted reunification services to father and to T.W.'s father, but not to mother (or to R.R.'s father). The court thereafter ordered the minors placed with the maternal grandmother.

In February 2012 the juvenile court increased father's visitation to eight hours a week, with no overnight visits pending a home assessment. The assessment, done by an ICPC (Interstate Compact on Placement of Children) worker in Nevada, where father lived, found that his home was appropriate for overnight visits. However, the court declined to order overnight visits until it had received an assessment with father's

---

[1] The Department noted that father had completed an anger management program and his visitation had been appropriate. The court found, however, that it would be detrimental to split up the minors at this time, the Department had not yet inspected father's home, father had apparently used marijuana recently, and father had missed a substantial number of visits.

girlfriend present in the home, as well as more information from father's therapist and the minor's therapist.

The Department's six-month review report recommended continued placement of the minor with the maternal grandmother and continued services for father. The minor was making progress, though he currently suffered from "emotional meltdowns." His therapist was working with him on making the transition into father's care at some point, but time would be needed to do so effectively. The minor wanted to live with father in Reno, but the Department considered a return to father's custody detrimental to the minor at that time because (1) father had not participated in court-ordered services, (2) Nevada had not formally accepted the ICPC referral, and (3) since father's girlfriend would probably be included in father's future living arrangements, it had to be determined whether things had changed significantly between her and father since the 2010 domestic violence incident.

On May 30, 2012, at the six-month review hearing, the juvenile court ordered immediate conjoint therapy with father and the minor, and granted six more months of reunification services to father.

In July 2012, after hearing testimony from the minor's therapist, the juvenile court granted overnight visits to father. The court also ordered the maternal grandmother (who opposed overnight visits, partly because of the minor's recent behavioral problems) to take part in conjoint therapy with father and the minor.

The Department's 12-month status review report recommended placing the minor with father under a family maintenance plan to be supervised by the State of Nevada in accordance with the ICPC. The report noted that father's home (where he lived with his brother and, on a part-time basis, the minor's half brother M.D.) had been found acceptable by the ICPC, and father's girlfriend had completed a Live Scan and had no criminal record. Unsupervised overnight visits went well.

3

The minor consistently said he wanted to live with father; the minor also liked father's girlfriend, his half sibling M.D., and the nine-year-old daughter of father's girlfriend.[2] His behavior at school had improved, though he still occasionally had emotional outbursts there and at home; his therapist thought his emotional issues related to his early childhood experiences and his currently unsettled situation.

Father had complied fully with his case plan, including anger management, counseling, and parenting programs. His conjoint counseling with the minor was going very well.

At the 12-month review hearing on September 26, 2012, the minor's counsel, the minor's CASA (court appointed special advocate), and the maternal grandmother opposed the Department's recommendation to return the minor to father's custody.

Father testified that it was important for the minor to maintain his relationships with the maternal grandmother, R.R., and T.W. Father intended to cohabitate again with father's girlfriend, who lived nearby, but not until they were sure they had overcome their past problems and could provide a good home for the children. He had never had another domestic violence incident. He had completed a course in anger management in Nevada after that incident and another course in the present proceeding as well as individual therapy, which had given him insight into his behavior. His conjoint therapy with the minor was helpful for his future parenting.

The maternal grandmother testified that she wanted to adopt the minor or become his legal guardian; she thought it would be detrimental to him to be separated from R.R. and T.W., and that he would not receive proper discipline in father's home. The minors' CASA testified that she thought the minor did not understand that if he lived with father, he would no longer have a home with the maternal grandmother, R.R., and T.W.; in the

---

[2] When asked if he would miss his brother and sister (R.R. and T.W.) if he moved out of the maternal grandmother's home, the minor mentioned his brother and sister in Reno.

CASA's opinion, the minor was not emotionally ready to make an easy transition from one home to the other. The minor's counsel argued that an immediate return to father's custody would create substantial risk of detriment to the minor because he had significant emotional problems and would be leaving the only home where he had ever known stability; furthermore, father was unlikely to foster the minor's relationship with the maternal grandmother, R.R., and T.W.

The juvenile court ruled as follows: "Well, I guess it's my turn. And I'm hoping that I'm being wholly sensitive as a grandparent to the significant role grandparents play in our society . . . . [¶] And judging the existence or nonexistence of substantial risk of detriment is highly [*sic*; hardly?] a science and includes consideration -- and substantial risk considers facing consideration [*sic*] of a review of the lives of all the people who touched the minor, and I believe under the circumstances in this case that there is a substantial risk of detriment if the minor is removed from his current placement with his grandmother and his siblings and returned to his father."

The juvenile court ordered further reunification services for father.

## DISCUSSION

" 'At the dispositional hearing, and at each review hearing prior to permanency planning, there is a statutory presumption that the child will be returned to parental custody. . . . At 6-, 12-, and 18-month review hearings the juvenile court must return the child to the custody of the parent unless it determines, by a preponderance of the evidence, that return of the child would create a substantial risk of detriment to the child's physical or emotional well-being.' [Citation.] . . . (*In re Marilyn H.* [1993] 5 Cal.4th [295,] 307.)" (*David B. v. Superior Court* (2004) 123 Cal.App.4th 768, 789 (*David B.*).)

The "substantial risk of detriment" standard "must be construed as a fairly high one. It cannot mean merely that the parent in question is less than ideal, did not benefit from the reunification services as much as we might have hoped, or seems less capable than an available foster parent or other family member." (*David B.*, *supra*,

5

123 Cal.App.4th at p. 789.)  In applying this standard, the juvenile court should consider only whether the parent shows a "grasp of the important parenting concepts—things such as a child's need for security, adequate nutrition and shelter, freedom from violence, proper sanitation, healthcare, and education." (*Id*. at p. 790.)

If the Department opposes return of the minor to the parent, it has the burden of establishing detriment.  (Welf. & Inst. Code, § 366.22, subd. (a); *In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1400 (*Yvonne W.*).)  A substantial risk of detriment means that "returning a child to parental custody represents some danger to the child's physical or emotional well-being." (*Yvonne W.*, at p. 1400.)

"In evaluating detriment, the juvenile court must consider the extent to which the parent participated in reunification services.  [Citations.]  The court must also consider the efforts or progress the parent has made toward eliminating the conditions that led to the child's out-of-home placement.  [Citations.]" (*Yvonne W.*, *supra*, 165 Cal.App.4th at p. 1400.)

We review the juvenile court's finding of substantial risk of detriment for substantial evidence, which means evidence that is "reasonable, credible and of solid value; it must actually be substantial proof of the essentials that the law requires in a particular case.  [Citation.]  In the absence of substantial evidence showing such detriment, the court is required to return the minor to parental custody.  [Citation.]" (*Yvonne W.*, *supra*, 165 Cal.App.4th at pp. 1400-1401.)

Here, the Department supported the minor's return to father.  Having visited extensively with father, and knowing and liking father's girlfriend and her children, the minor was eager to live with father permanently.  It was undisputed that father had completed his reunification services.  Although the minor was not removed from father's custody in this proceeding, father had worked diligently to overcome the effects of the domestic violence incident that caused the minor's prior removal by the family court.  Father engaged in every form of counseling and therapy mandated by the juvenile court,

6

including conjoint therapy with the minor and the maternal grandmother. He testified that he intended to maintain the minor's relationship with the maternal grandmother and his half siblings who lived in the grandmother's home. There was no evidence that father failed to grasp any of "the important parenting concepts" mentioned by the court in *David B.*, *supra*, 123 Cal.App.4th at page 790.

The juvenile court did not cite *any* evidence that returning the minor to father's custody would create a "substantial risk of detriment" to the minor. Because the court considered the minor's current placement preferable, we might infer that the court thought removing him from that placement would jeopardize his emotional well-being, but the court did not explain on what evidence it based that finding. Nor did the court explain why it rejected the evidence that the minor was not troubled by the prospect of leaving the current placement. We are mindful of the views expressed by the maternal grandmother, the minor's counsel, and the minor's CASA. However, their views must be tethered to supporting evidence.

Because the juvenile court's order denying the minor's return to father was not supported by substantial evidence, we must reverse.

## DISPOSITION

The order denying the minor's return to father is reversed. The matter is remanded with directions that the court order the minor's return to father under a family maintenance plan, to be supervised by the State of Nevada.

                                                          RAYE          , P. J.

We concur:

      NICHOLSON      , J.

      MURRAY        , J.