Filed 9/28/15  In re C.K. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Trinity)

----

| | |
|---|---|
| In re C.K., a Person Coming Under the Juvenile Court Law. | C076648 |
| TRINITY COUNTY HEALTH AND HUMAN SERVICES,<br><br>          Plaintiff and Appellant,<br><br>     v.<br><br>A.K.,<br><br>          Defendant and Appellant;<br><br>C.K.<br><br>          Respondent. | (Super. Ct. No. 13JU0011B) |

1

A.K. (mother) appeals from juvenile court orders (issued at the 12-month review hearing) continuing the placement of the minor C.K. with the paternal grandmother and extending mother's reunification services for six months. (Welf. & Inst. Code, § 366.21, subd. (f).)[1] Mother contends substantial evidence does not support the juvenile court's finding that returning the minor to mother's custody would cause detriment to the minor. Co-appellant Trinity County Department of Health and Human Services (the department) joined mother's opening brief on September 11, 2014.

We conclude substantial evidence supports the juvenile court's finding. We will affirm the juvenile court orders.

### BACKGROUND

In April 2013, the department filed a petition under section 300, subdivision (b), as to the 10-year-old minor, alleging that mother and other adults abused methamphetamine and marijuana in mother's home and that mother engaged in domestic violence with her boyfriend. The minor's presumed father, R.K., previously had custody of the children, but he died in a house fire in January 2011. After that, mother took them back.

The detention report stated that the minor and his 13-year-old sister, H.K., had been placed voluntarily by mother with J.R., a teacher at their school. However, the teacher was having financial difficulty caring for both minors. The paternal grandmother, S.K., had lived in Santa Cruz and later moved to Felton. She once had temporary legal guardianship of the children and had been approved as a caregiver for them. The teacher had been approved as a caregiver only for the minor.

Mother had used methamphetamine for the last three years and had been repeatedly arrested on drug-related charges. She had tested positive for methamphetamine and THC after her most recent arrest in February 2013. Her boyfriend

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

had been arrested on domestic violence charges and more recently on drug-related charges, and was now incarcerated in the local jail.

At the initial hearing in April 2013, the juvenile court ordered the minor detained in the teacher's home until the end of the school year, then moved to the grandmother's home (where the minor's sister was already residing).

The jurisdiction report recommended sustaining the section 300 petitions as to both minors.[2] The report stated that mother, who was still on probation after a January 2013 drug possession conviction, had not protected the children from the boyfriend or from her own substance abuse.

At the jurisdiction hearing, mother submitted on the report. The juvenile court sustained the section 300 petitions.

The disposition report recommended out-of-home placement for the minor and reunification services for mother. Mother said she had ceased using methamphetamine after February 2013; she used medical marijuana, but would abstain from it during the reunification period. She was "ashamed and embarrassed" about her conduct and was willing to do whatever was necessary to reunify with her children.

Placement of the minor with the grandmother was acceptable. The minor was developmentally on track and mentally and emotionally stable, but his grades had slipped.

Mother had visited the children as scheduled, but the minor wanted to see her more often. Visitation at least once a month was recommended.

At the disposition hearing in June 2013, the juvenile court ordered out-of-home placement for the minor and reunification services for mother.

---

[2] The sister's petition was filed under a different case number. The sister is not involved in this appeal.

In September 2013, the juvenile court held a hearing on visitation. Mother claimed the grandmother was thwarting telephone contact with the children, but the department disagreed. The juvenile court ordered the children to call mother once a week and gave mother permission to call at other times.

The six-month status review report, filed in November 2013, recommended continued out-of-home placement and reunification services.

Mother had recently moved from an isolated location to one where services and transportation were more easily accessible. Her compliance with services, "adequate" before, was now "excellent." Visitation had gone well, though mother still felt she was not getting enough telephone contact. The minor was doing well in his placement, but said he missed mother. The grandmother was willing to undertake legal guardianship or adoption if necessary.

At the six-month review hearing, the juvenile court continued the minor's placement and mother's services. The juvenile court gave the department discretion as to unsupervised visitation.

The 12-month status review report, filed in April 2014, recommended returning the minor to mother's custody at the end of the school year, with six months of supervised family maintenance and review at the end of that time.[3]

Mother had complied substantially with her case plan as to parenting education, substance abuse treatment, and drug testing. She had obtained a one-bedroom apartment, but would seek a bigger place if given custody; however, "housing and income have

---

[3] As to the sister, the department recommended terminating mother's services and setting a section 366.26 hearing. The sister expressed a strong desire to stay with the grandmother and also expressed a distrust of mother. At 14, she was old enough for the juvenile court to respect her wishes. However, the juvenile court did not terminate mother's services.

continued to be a primary struggle" for her. Visitation had gone well, but unsupervised visitation had not yet occurred.

The minor remained developmentally on track and mentally and emotionally stable, but he was still performing below grade level in school, despite receiving tutoring and making "tremendous progress." He might have a learning disability. He had been assessed for an Individualized Education Plan (IEP).

The minor told the social worker he wanted to live in the Santa Cruz area with the grandmother and spend summers with mother. He felt he did better in school with the help of the grandmother and tutoring. But if mother could get tutoring for him, he would want to stay with her.

At the 12-month review hearing on April 24, 2014, the department presented the minor's just-prepared IEP to the juvenile court.

County counsel stated that she had recently spoken to the minor and the sister separately; they had a very close sibling bond. The minor wanted to keep going to the school he now attended and feared he would lose focus in school if he returned to mother's home.

County counsel noted that mother still did not have good access to transportation for school, tutoring, and extracurricular activities. Counsel proposed that the juvenile court adopt the report's recommendations for three months, then review the matter.

The juvenile court stated that mother had done good work and it seemed early to stop the process, but the minor's desires were also understandable. The juvenile court was "open to suggestions."

Mother's counsel stated that mother had made "incredible" efforts and succeeded at everything she had been asked to do, but the children had not been able to see it. The grandmother had tried to thwart reunification, frustrating visitation and "demonizing" mother to the children. Counsel proposed returning the minor and the sister to mother's

5

custody for the summer at the end of the school year, then keeping the minor in mother's home and determining the sister's wishes at that time.

County counsel proposed taking the children's testimony in chambers. The juvenile court did so.

The minor testified that he would like to stay in the Santa Cruz area until the end of the school year, go to mother's home for the summer, and see how he felt at the end of the summer. He had no concerns about going back to mother's home; he would feel safe there.[4]

Back in open court, the juvenile court stated that it would not return the minor to mother at the end of the school year. Instead, the juvenile court would continue mother's services and allow the minor to have an extended home visit over the summer, then review the matter at the end of summer.

County counsel asserted that since mother had done everything asked of her, the juvenile court had to make a finding of detriment to the minor before it could refuse to return him to mother's custody.

The juvenile court found detriment to the minor as follows: the minor felt he would not thrive in school if returned to mother's custody, and both children were "quite committed to remaining in the [Santa Cruz] area." The children's need for stability was paramount. More time was needed "to determine whether there would be a continu[ing] detriment."

---

[4] The sister did not want to relocate to mother's home even for the summer. She had too many bad memories of life there. She did not believe mother's claim that a flat tire had prevented her from making a visit, but if it were true, mother could not be relied on to provide transportation. The grandmother had not frustrated visitation or done anything else mother alleged. The sister was happy where she was now, surrounded by friends and family, and did not want to start all over with school. She wanted stability in her life.

6

Mother's counsel stated that mother could provide a tutor for the minor. County counsel asserted that mother did not need to provide transportation to school because the school was walking distance from her home.

The juvenile court replied: "I'm sticking to my order." The juvenile court then spelled out its order: "[The minor] remains placed with his grandmother. He will visit his mom for 30-day increments beginning at the end of school, returning for a touchdown [*sic*] at his grandma's house, and then going back. And those dates can be worked out specifically by the department. I will delegate to the department the authority to set those specific dates. But the visits will be in approximately one-month increments." A review hearing would be set at the end of summer, and a six-month review in October 2014.

The juvenile court entered written findings and orders consistent with its verbal orders.

## DISCUSSION

Mother, joined by the department, contends substantial evidence does not support the juvenile court's finding of detriment to the minor from an immediate return to mother's custody. We disagree.

" 'At the dispositional hearing, and at each review hearing prior to permanency planning, there is a statutory presumption that the child will be returned to parental custody. . . . At 6-, 12-, and 18-month review hearings the juvenile court must return the child to the custody of the parent unless it determines, by a preponderance of the evidence, that return of the child would create a substantial risk of detriment to the child's physical or emotional well-being.' [Citation.] . . . (*In re Marilyn H.* [1993] 5 Cal.4th [295,] 307.)" (*David B. v. Superior Court* (2004) 123 Cal.App.4th 768, 789 (*David B.*).)

The "substantial risk of detriment" standard "must be construed as a fairly high one. It cannot mean merely that the parent in question is less than ideal, did not benefit from the reunification services as much as we might have hoped, or seems less capable

7

than an available foster parent or other family member." (*David B., supra*, 123 Cal.App.4th at p. 789.)

"In evaluating detriment, the juvenile court must consider the extent to which the parent participated in reunification services. [Citations.] The court must also consider the efforts or progress the parent has made toward eliminating the conditions that led to the child's out-of-home placement. [Citations.]" (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1400 (*Yvonne W.*).)

We review the juvenile court's finding of substantial risk of detriment for substantial evidence. In doing so, we construe the evidence, including reasonable inferences, most favorably to the juvenile court's finding. (*Yvonne W., supra*, 165 Cal.App.4th at pp. 1400-1401.)

Substantial evidence supports the trial court's finding of substantial detriment to the minor if the minor immediately returned to mother's custody. The minor was in school in Felton, was receiving academic support in the form of tutoring, and was also receiving therapy. He also had an IEP in place. The minor said he gets better grades and is more focused in school with the guidance of his grandmother. Meanwhile, housing and income have been a "primary struggle" for mother.

Mother suggests the juvenile court's finding was based on detriment to the minor's "emotional well-being" if placed in mother's custody. We do not read the juvenile court's comments that way, but in any event, there is evidence of the minor's concern that he would not do as well in school if he returned to mother's home. Mother claims there is no evidence that she would not be able to help the minor with his schoolwork. As mother points out, the department recommended placing the minor with her on a supervised family maintenance regimen. But the juvenile court was within its discretion to reject that recommendation based on the evidence. Even if there was evidence to support a return to mother, it is not our role to weigh the evidence. There was substantial

8

evidence to support the juvenile court's finding that returning the minor immediately to mother's custody would cause substantial detriment to him.

DISPOSITION

The juvenile court orders are affirmed.


      MAURO      , J.


I concur:


      HULL      , Acting P. J.

DUARTE, J., Dissenting.

I respectfully disagree with the majority's assessment of the record, and conclude that the juvenile court's finding of substantial risk of detriment to the minor (C.K.) is unsupported by the evidence. In so concluding, I emphasize that finding a substantial risk of detriment does not simply mean that a parent is less than ideal or less capable than another option, as we arguably see here. (See *David B. v. Superior Court* (2004) 123 Cal.App.4th 768, 789 (*David B.*).) Rather, the finding signals some *danger* to the child's *physical or emotional well being*. (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1400 (*Yvonne W.*).) We have previously noted that views forecasting detriment will follow a child's return to his or her parent "must be tethered to supporting evidence." (*In re E.D.* (2013) 217 Cal.App.4th 960, 966.)

Simply put, at this stage in the proceedings parents are entitled to parent their child unless there is evidence of harm to the child from their parenting. I agree with Trinity County Health and Human Services (Department) and mother that here there was no such evidence. Accordingly, I dissent.

The finding of detriment followed an exchange where, after speaking with both C.K. and his older sister in chambers, the juvenile court purported to "continue the reunification services for the mother . . . and set a review hearing towards the end of the summer to see how we're doing on the extended reunification with respect to [C.K.]." At that point, as the court attempted to begin its ruling as to C.K.'s sister, the Department objected that "mother has done what she's supposed to do in terms of reunification, and our reading of the law says that . . . pending a finding that it would be a detriment to the child, that the placement does need to be with the mother."

The juvenile court immediately responded: "I'm going to make[] a finding of detriment. I'm making a finding of detriment based on the reasons that were articulated by to me by Charles directly, in that he feels that he will not thrive in school if placement is continued into the school year, and that both of the children are quite committed to remaining in the Felton area [with their grandmother]. The need of a child for stability is paramount, and although the mother does have substantial due process rights to raise the

1

children at this point, those rights remain in play and are juxtaposed with the rights of the children. And therefore, although the reunification plan has been complied with substantially, I think we need more time in order to determine whether there would be a continued detriment." The court added: "[I]f we want to appeal it, we can appeal it."

Mother's counsel objected and pointed out that the Department was willing to provide a tutor to C.K. at his mother's residence--a fact supported by the record. The juvenile court responded, "Well, the concerns that [C.K.] had had very little to do with the tutoring. It [*sic*] had much more to do with the stability." The Department's counsel added that C.K.'s school was within walking distance of mother's house, so there were no transportation concerns, to which the court replied, "I'm sticking to my order."

The juvenile court's observations about C.K.'s "concerns" are not supported by the record, including C.K.'s in-chambers testimony.

C.K. told the social worker that he got " 'better grades' " and was " 'more focused' " in school with the guidance of his grandmother. He added that he thought his mother could help him in the same way, but that he " 'might want to play more.' " He said that *if his mother could secure a tutor for him*, he " 'would stay with her.' " In his conversations with the social worker, C.K. expressed no concerns about any "stability" issues beyond tutoring.

Nor did C.K. express *any* stability concerns in chambers, where the following conversation took place in relevant part:

"THE COURT: I think the main thing is that you guys know we want to hear from you. I don't want to be making a decision that doesn't take into account what you think is best. And I know that you're both smart enough to know that sometimes what is best is not always what you want or wish for. You have to, like [C.K.]'s doing, he's thinking about doing what's right for success at school.

"So why don't you just tell me how do you feel about that proposal that you stay where you are in Felton [grandmother's], finish out the school year, and that in the summer you go visit -- you live with mom, and then at the end of summer, we see how

2

that went, and at that time we could see whether or not you wanted to stay with mom or whether you wanted to go back to Felton.

"So [C.K.] why don't you go first.

"C.K.: I would rather that yes, see how it works.

"THE COURT: You would like to do that?

"C.K.: (Nods.)

"THE COURT: And do you have concerns about going to your mom's?

"C.K.: No.

"THE COURT: You would feel safe?

"C.K.: (Nods.)

"THE COURT: And you know that you can reach your grandma any time you need to, and she can come and visit, make that possible?

"C.K.: Uh-huh.

"THE COURT: Is there anything else you might be concerned about over the summer [at mother's]?

"C.K.: No.

"THE COURT: Have you been to Lewiston [i.e., mother's residence] before?

"C.K.: Lewiston, yes, once.

"THE COURT: You've seen her [mother's] house there?

"C.K.: (Nods.)

"THE COURT: So you know what you're in for?

"C.K.: Uh-huh."

The court then discussed C.K.'s sister's desires with her; she clearly wanted to remain with her grandmother regardless of where C.K. went. The court then asked C.K. how he would feel if he were with his mother, and his sister was "away for the whole summer and maybe just visiting for a couple of weeks" to which C.K. responded, "That's fine."

3

As is evident from the transcript, C.K. simply agreed with the court's proposal to maintain the status quo, while making clear that he felt safe with mother and was fine staying at her house, even without his older sister. Thus the juvenile court did not correctly state C.K.'s "concerns" as the record reflects them.

Even assuming for the sake of argument that C.K.'s concern about stability was couched correctly by the trial court--which I do not believe is the case based on the context of the exchange--it does not show a substantial risk of detriment.

As the majority correctly points out, the order at issue was made at the 12-month review hearing. As the majority also correctly describes, at this hearing the court *must return the child to the custody of the parent* unless it determines that return would create a *substantial risk of detriment* to the child's physical or emotional well-being. (Welf. & Inst. Code, § 366.21, subd. (f).) As I emphasized *ante*, substantial risk of detriment does not simply mean that mother is less than ideal or is less capable than the grandmother. "When we are considering whether to deprive a parent of custody, we are concerned only about his or her grasp of the important parenting concepts—things such as a child's need for security, adequate nutrition and shelter, freedom from violence, proper sanitation, healthcare, and education." (*David B., supra,* 123 Cal.App.4th at p. 790.)

On this record, the only possible detriment in one of these important parenting concepts is education. And the record is clear that the tutor C.K. wanted (and assuming for the sake of argument needed) *was available at mother's house.* To be sure, C.K. had just secured an individualized education plan (IEP) at the Felton school, but there is nothing in the record to suggest that an IEP could not be secured for him at the school within walking distance of his mother's residence. The IEP was not even discussed as a possible reason for detriment to C.K. should he be returned to mother, and the tutor issue was resolved.

In a single paragraph, and without citation to authority, the majority concludes that substantial evidence supports the detriment finding because C.K. "was in school in Felton, was receiving . . . tutoring, and was also receiving therapy. He also had an IEP in place. [He] said he gets better grades and is more focused in school with the guidance of

4

his grandmother. Meanwhile, housing and income have been a 'primary struggle' for mother." (Maj. opn. at p. 8.) I disagree that this constitutes substantial evidence of the required *substantial risk of detriment* to C.K.'s physical or emotional well-being required to keep him away from his mother at this stage in the proceedings.

First, there is no evidence that mother's housing and income issues were thought to be potential causes of physical or emotional detriment to C.K. This evidence of her struggle was not reason to decline to return C.K. to her, absent evidence that being with her would cause him harm. "A child's dislike of a parent's living arrangement, without more, does not constitute a substantial risk of detriment." (*Yvonne W., supra,* 165 Cal.App.4th at p. 1401 [where mother living in shelter and child expressed "fear, anxiety, and unhappiness" about living there, insufficient showing of detriment]; see also *David B., supra,* 123 Cal.App.4th at p. 789, 792 [court could not properly consider that parent was too poor to afford housing to support its detriment finding]; *In re G.S.R.* (2008) 159 Cal.App.4th 1202, 1213 [agency cannot "bootstrap" the fact that parent was too poor to afford housing to support a detriment finding].) The juvenile court appropriately did not appear to consider this issue toward its finding of detriment, and this court should not rely on it as part of the required substantial evidence analysis.

This brings the analysis back to education, because that is all that remains on which to possibly base C.K.'s continued removal from his mother. The only education concern supported by this record involves C.K.'s IEP, but there is nothing in the record to indicate a delay in its implementation might result in substantial detriment. Although the majority cites as its primary basis for continued removal "evidence of the minor's concern that he would not do as well in school if returned to mother's home" (see maj. opn. at p. 8), this concern was addressed *prior to the hearing*. C.K.'s concern about doing well at school if returned to his mother's home was expressed by him *in tandem* with his comment that his concern would be alleviated if he had a tutor at his mother's residence. The record is clear that the Department was willing to pay for that tutor, and brought its willingness to do so to the attention of the juvenile court. The majority's reliance on this concern is misplaced, as the concern was alleviated.

Further, the IEP never surfaced as a reason to keep C.K. away from his mother; there was no evidence that the just-obtained IEP could not be re-obtained at another school. The record is clear that C.K. was already improving in school without benefit of the IEP. In any event, delay in securing an IEP, without more evidence, is not detriment as defined by the relevant statute. (See *Yvonne W., supra,* 165 Cal.App.4th at p. 1403 [mother's lack of a supervision plan, her lack of organizational skills, and the child's incomplete IEP assessment did not constitute substantial risk of detriment].)

The majority offers that it does "not read the juvenile court's comments" to be based "on detriment to the minor's 'emotional well-being' " as suggested by mother in her briefing (see maj. opn. at p. 8), but if not that, what? Certainly not his physical well-being, which was not at issue at the 12-month review. Then where is the substantial risk? As I have explained, removal requires "a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (Welf. & Inst. Code, § 366.21, subd. (f).) The detriment finding here is not "tethered to supporting evidence." (*In re E.D., supra,* 217 Cal.App.4th at p. 966; *id.* at pp. 964-967 [where Department supported child's return to father and grandmother and court appointed special advocate opposed return and testified to risk of emotional detriment from transition from grandmother to father, court's finding of detriment not supported by substantial evidence].)

I would reverse the juvenile court's order for lack of substantial evidence.


      DUARTE   , J.

6