Filed 2/25/22  In re King B. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| In re King B., et al., Persons Coming Under the Juvenile Court Law. | B312472 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 21CCJP00964A-B) |
| Plaintiff and Respondent, | |
| v. | |
| Cedric B., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Commissioner. Affirmed.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel and William D. Thetford, Principal Deputy County Counsel for Plaintiff and Respondent.

Cedric B. (father) appeals from an April 23, 2021 order of the juvenile court that adjudicated two of father's children juvenile court dependents, granted the children's mother full physical and joint legal custody, and permitted father to have only monitored visits with the children. Father contends the juvenile court erred in requiring his visits to be monitored because there was no substantial evidence that unsupervised visits would be detrimental to the children. We find no error, and thus we will affirm the order in full.

**FACTUAL AND PROCEDURAL BACKGROUND**

King B. (born in May 2014) and Ka.B (born in August 2015) are the children of father and S.H. (mother). Prior to these proceedings, father and mother did not live together, but had an informal shared custody arrangement.

Father has four other children with different mothers: Ka'M.B (date of birth and mother unknown); Ki.B. (born in 2008), whose mother is Chanelle C.; and twins Mar.B. and Mas.B. (born in February 2014), whose mother is T.T. The present appeal concerns only King and Ka.

Father had several contacts with the Los Angeles County Department of Children and Family Services (DCFS) prior to this proceeding. In May 2009, father and Chanelle C. entered into a voluntary family maintenance plan following extensive incidents of domestic violence, including during Chanelle's pregnancy with Ki. In October 2016, father was arrested for driving under the influence with two of his children and his niece in the car. And in February 2018, T.T. reported that father had pushed her onto the bed and put his hand over her neck during an argument. The

2

incident ended only when one of the couple's young children came into the room and began yelling at father.

*A. Present Investigation*

The family came to DCFS's attention on February 27, 2021,[1] when father was detained by law enforcement after a domestic violence incident with his girlfriend, T.S. Law enforcement reported that father had punched T.S. in the face and then strangled her for approximately a minute. T.S.'s children pushed their way into the room and hit father until he let go of T.S. Father was arrested, and King and Ka.B. were taken into protective custody. Because father refused to provide any information about their mother, the children were placed in foster care for several days. They were released to mother on March 4.

A children's social worker (CSW) interviewed father, who insisted that he had not been the aggressor in the domestic violence incident. He denied hitting or strangling T.S., and said T.S. had "set it all up."

Five-year-old Ka. said she had witnessed the incident between father and T.S. Ka. said father was "fighting" with T.S., and T.S. had grabbed a knife from the kitchen. Ka. said she had been scared by the fighting. Six-year-old King said he heard the fighting but did not see it. When King walked out of his bedroom, father told him to leave the house. King was frightened and walked alone to a near-by store.

T.T., the mother of father's six-year-old twins, said she previously had had a restraining order against father. Although

---

[1]     All subsequent dates are in 2021 unless otherwise indicated.

the restraining order no longer was in place, T.T. did not allow the children to see father alone.

*B.    Petition; Detention*

DCFS filed a juvenile dependency petition on March 2. It alleged that the children were juvenile court dependents pursuant to Welfare and Institutions Code[2] section 300, subdivisions (a) and (b), because father and T.S. had a history of engaging in violent altercations in the children's presence, and father recently had struck T.S. in the face and choked her. The domestic violence between father and T.S. was alleged to create an endangering home environment for the children.

On March 8, 2021, the juvenile court ordered the children detained from father and placed with mother under DCFS supervision. Father was granted monitored visits with the children after his release from custody.

*C.    Jurisdiction and Disposition*

In April 2021, mother asked DCFS not to interview the children. She explained that King was having nightmares and difficulty sleeping, and she did not want Ka. to have to relive the incident.

DCFS reported that mother was providing a stable and loving home environment for the children, and both children appeared to be doing well in her care. Father had not contacted mother or DCFS to arrange visits with the children. DCFS recommended that the court terminate its jurisdiction with a family law order giving mother sole physical and joint legal custody of the children, with father to have monitored visits.

---

[2]    All subsequent statutory references are to the Welfare and Institutions Code.

4

At the April 23 jurisdiction/disposition hearing, father's counsel asked the court to dismiss both counts of the petition, urging that father no longer was in a relationship with T.S., and thus that there was no risk of future domestic violence between them. Father's counsel also requested that mother and father be granted joint physical custody of the children or, in the alternative, father be granted nine hours per week of unmonitored visitation.

The children's counsel asked the court to sustain the allegations of the petition, urging that the violence between father and T.S. had been significant and both children had been traumatized. County counsel agreed, noting that the children were very young, the level of violence between father and T.S. had been significant, and father had not addressed any of the case issues since being released from jail a month earlier. County counsel further asked that father be ordered to participate in counseling and a 26-week domestic violence program.

The court sustained both counts of the petition, noting that the domestic violence had been recent, recurring, and traumatizing for the children. The court further found that mother was nonoffending and the children were safe in her care. The court therefore declared the children juvenile court dependents and ordered them removed from father. It then entered an exit order that granted mother sole physical and joint legal custody of both children, granted father nine hours per week of monitored visitation, ordered father to complete domestic violence and individual counseling, and terminated juvenile court jurisdiction. Father timely appealed.

## DISCUSSION

Father contends the juvenile court erred by denying him unmonitored visitation. For the reasons that follow, father's contention lacks merit.

### I.
### Legal Standards

*A.     Section 362.4*

The order at issue (sometimes referred to as an "exit order") was entered pursuant to section 362.4, which provides that when a juvenile court terminates its jurisdiction, it may enter orders "determining the custody of, or visitation with, the child." (§ 362.4, subd. (a); *In re Roger S.* (1992) 4 Cal.App.4th 25, 30.) Such an order may be transferred to a family court file, and it remains in effect until modified or terminated by the superior court. (*In re Chantal S.* (1996) 13 Cal.4th 196, 203; § 362.4.)

Father asserts without analysis that the juvenile court's exit order necessarily was predicated on a finding that unmonitored visitation would be "detrimental" to the children, which finding father contends was not supported by substantial evidence. But nothing in section 362.4 requires a juvenile court to order unmonitored visitation in the absence of a finding of detriment. Indeed, while section 362.4 directs courts to make custody and visitation orders upon terminating dependency jurisdiction, it does not set out any standards governing the terms of such orders. (See § 362.4.)[3]

---

[3]     None of the cases father cites suggests that the juvenile court was required to make a "detriment" finding in the context of an exit order entered pursuant to section 362.4. Significantly, each of the cited cases arose under sections of the Welfare and Institutions Code that expressly require a finding of detriment.

In the absence of a statutory directive, appellate courts have held that when making exit orders under section 362.4, " 'the [juvenile] court's focus and primary consideration must always be *the best interests of the child.*' " (*In re T.S.* (2020) 52 Cal.App.5th 503, 513, italics added, quoting *In re Nicholas H.*

For example, *In re A.J.* (2015) 239 Cal.App.4th 154, 158–159 reviewed an order entered pursuant to section 366.26, subdivision (c)(4)(C), which provides that if a child is placed into permanent guardianship, the juvenile court "shall also make an order for visitation with the parents . . . unless the court finds by a preponderance of the evidence that the visitation *would be detrimental* to the physical or emotional well-being of the child." (Italics added.) *Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 763 and *In re E.D.* (2013) 217 Cal.App.4th 960, 962 considered orders entered pursuant to section 366.21, which provides that at a status review hearing, a dependent child shall be returned to the parent's physical custody unless the court finds "that the return of the child to his or her parent or legal guardian would create a *substantial risk of detriment* to the safety, protection, or physical or emotional well-being of the child." (§ 366.21, subd. (e)(1), italics added.) Finally, several other cases considered orders entered pursuant to section 362.1, which provides that while a dependency proceeding remains open, a parent shall be denied visitation only if such "*shall jeopardize the safety* of the child." (Italics added; see *In re C.C.* (2009) 172 Cal.App.4th 1481, 1491; *In re Dylan T.* (1998) 65 Cal.App.4th 765, 770; *In re Mark L.* (2001) 94 Cal.App.4th 573, 580.) Because none of these cases concerns the statute at issue in this case, none supports father's contention that the juvenile court was required to make a finding of detriment in order to require that father's visitation be monitored. (See *In re C.C.*, at p. 1492 [juvenile court order must be "tethered to the statutory directive"].)

(2003) 112 Cal.App.4th 251, 268; accord, *In re John W.* (1996) 41 Cal.App.4th 961, 973 ["in making exit orders, the juvenile court must look at the best interests of the child"]; *In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712 [upon terminating its jurisdiction, juvenile court shall make custody and visitation determinations "based on the best interests of the child without any preferences or presumptions"].) We will presume the juvenile court applied that standard in the present case. (See *People v. Thomas* (2011) 52 Cal.4th 336, 361 ["In the absence of evidence to the contrary, we presume that the court 'knows and applies the correct statutory and case law.' "].)

B.      *Standard of Review*

Father contends there is a split of authority concerning the standard of appellate review applicable in this appeal. According to father, some cases have applied an abuse of discretion standard, while others have applied the substantial evidence test. Father urges us to apply the latter standard, contending that it relies on "reasonable, credible solid evidence," rather than on a juvenile court's "subjective, albeit well-intended" exercise of discretion.

In so contending, father misapprehends the relevant standards of review. A discretionary determination by a trial court—here, the juvenile court's custody and visitation order—is reviewed for an abuse of discretion. (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255; *K.L. v. R.H.* (2021) 70 Cal.App.5th 965, 979.) That review, however, has several components. As our Supreme Court has explained: " '[T]he trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is

8

reversible only if arbitrary and capricious.' " (*Gaines v. Fidelity National Title Ins. Co*. (2016) 62 Cal.4th 1081, 1100.)

Our Supreme Court recently described the interplay of these standards in the context of a discretionary determination under section 366.26, subdivision (c)(1)(B)(i). The high court explained that while the factual components of the juvenile court's findings are reviewed for substantial evidence, the juvenile court's ultimate determination—that is, its "delicate balancing of these determinations as part of assessing the likely course of a future situation that's inherently uncertain"—is reviewed for an abuse of discretion. (*In re Caden C*. (2021) 11 Cal.5th 614, 640.) Although "the practical difference between the standards is not likely to be very pronounced, . . . [a]t its core, [this] hybrid standard . . . simply embodies the principle that '[t]he statutory scheme does not authorize a reviewing court to substitute its own judgment as to what is in the child's best interests for the trial court's determination in that regard, reached pursuant to the statutory scheme's comprehensive and controlling provisions.' " (*Id*. at p. 641.)

Applying this standard to the juvenile court's determination in the present case, we will review the juvenile court's decision to grant father monitored visitation for an abuse of discretion. To the extent that determination requires factual findings, we will review such findings for substantial evidence.

**II.**

**The Juvenile Court Did Not Abuse Its Discretion by Denying Father Unmonitored Visitation**

Father contends the trial court erred by denying him unmonitored visitation with the children. As we discuss, substantial evidence supported the juvenile court's conclusion

9

that unmonitored visitation was not in the children's best interests, and thus the court did not abuse its discretion by ordering monitored visitation.

We begin by noting that father's opening brief significantly misstates the substantial evidence standard of review. As our Supreme Court recently explained: "In reviewing factual determinations for substantial evidence, a reviewing court should 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.' (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.) The [juvenile court's] determinations should 'be upheld if . . . supported by substantial evidence, *even though substantial evidence to the contrary also exists* and the trial court might have reached a different result had it believed other evidence.' (*Ibid.*; see also 9 Witkin, Cal. Procedure (5th ed. 2020) Appeal, § 365.)" (*In re Caden C., supra*, 11 Cal.5th at p. 640, italics added.)

Father's contention that "the substantial evidence standard amounts to a contention that" the " 'undisputed facts lead to only one conclusion' " (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1529 (*I.W.*), disapproved of on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1003, fn. 4) takes the quoted language significantly out of context. *I.W.* concerned a parent's challenge to an order terminating parental rights. The parent contended, among other things, that the juvenile court erred in terminating parental rights because substantial evidence supported her contention that the child was not likely to be adopted. (*Id.* at p. 1525.) In rejecting this contention, the Court of Appeal explained that because the mother was challenging a juvenile court's factual finding, that finding must be affirmed if supported by substantial evidence, and thus could be reversed only if "the

10

evidence compels a finding in favor of the appellant as a matter of law"—that is, "where undisputed facts lead to only one conclusion." (*Id.* at pp. 1528, 1529.)

As applied in the present case, the standard articulated in *I.W.* permits reversal of the exit order only if the juvenile court's findings are not supported by substantial evidence—or, stated differently, if the undisputed facts compel the conclusion that requiring monitored visits between father and the children is not in the children's best interests. No such undisputed evidence appears here. As discussed above, the evidence before the court demonstrated that father engaged in an act of extreme violence against his girlfriend in the presence of his two young children. That violence traumatized both children, causing King to have nightmares and difficulty sleeping, and led to father's arrest and the children's placement in foster care. Father showed no remorse for his conduct, insisting that he had not been the aggressor in the domestic violence incident. Further, he failed to address any of the case issues by participating in counseling or domestic violence classes upon his release from jail.

The incident of domestic violence between father and T.S., moreover, was not an isolated event. Father had a history of domestic violence with his romantic partners: In 2009, father engaged in domestic violence against Chanelle C., the mother of Ki.B.; and in 2018, he was involved in another incident of domestic violence with T.T, the mother of father's twins. The incident with T.T., moreover, was strikingly like the one reported by T.S.: According to T.T., father had pushed her onto the bed and put his hands around her neck. That incident, like the incident at issue here, ended only when children present in the home intervened. Under these circumstances, the juvenile court

11

was well within its discretion in concluding that it was in the children's best interests that visits with father remain monitored.

Father contends that the trial court erred in finding that unmonitored visitation would be detrimental to the children because father was no longer romantically involved with T.S. and had no intention of resuming a relationship with her. As an initial matter, the only evidence that father and T.S. no longer were involved was father's own representation to DCFS—a representation the juvenile court was not required to accept. Moreover, even if father and T.S. had separated, their separation did not require the court to conclude that the children no longer would be exposed to domestic violence. As we have described, father had a history of domestic violence with many of his romantic partners; the juvenile court therefore could reasonably have concluded that a similar incident of domestic violence, either with T.S. or a future partner, was likely to occur in the future. (See *In re E.B.* (2010) 184 Cal.App.4th 568, 576, overruled on other grounds in *Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1003, fn. 4 [" '[P]ast violent behavior in a relationship is "the best predictor of future violence." Studies demonstrate that once violence occurs in a relationship, the use of force will reoccur in 63% of these relationships. . . . Even if a batterer moves on to another relationship, he will continue to use physical force as a means of controlling his new partner.' "].)

Father next contends that the incident of domestic violence did not place the children at risk of harm because he never intentionally hurt them. It is well established, however, that " '[d]omestic violence in the same household where children are living . . . is a failure to protect [the children] from the substantial risk of encountering the violence and suffering

12

serious physical harm or illness from it.' " (*In re E.B.*, *supra*, 184 Cal.App.4th at p. 576; *In re Heather A.* (1996) 52 Cal.App.4th 183, 194 [same].)  Children can be " 'put in a position of physical danger from [domestic partner] violence' because, 'for example, they could wander into the room where it was occurring and be accidentally hit by a thrown object, by a fist, arm, foot or leg. . . .' " (*In re E.B.*, at p. 576.)  Domestic violence between parents also can create psychological distress for children, as occurred in the present case.

Father also contends that the monitored visitation order was unjustified because the children were not afraid of him and wished to continue spending time with him.  That the children did not express fear of father is not determinative:  The decisive issue, as we have said, is the children's best interests, as measured by their physical and psychological well-being.  The juvenile court properly concluded that it was reasonably likely that father would engage in future domestic violence in the children's presence, endangering both their physical and psychological health.

Father contends, finally, that the visitation order was erroneous because "robust visitation" is essential to maintaining a bond between parent and child.  The cases father cites for this proposition, however, addressed the *frequency* of visitation between parents and children—not whether such visits should be monitored or unmonitored.

## DISPOSITION

The April 23, 2021 order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

VIRAMONTES, J.*

---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.