Filed 8/18/23  In re E.C. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re E.C., a Person Coming Under the Juvenile Court Law. | B315124, B322648 (Los Angeles County Super. Ct. No. 21CCJP03306A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>D.O.,<br><br>        Defendant and Appellant. | |

APPEALS from orders of the Superior Court of Los Angeles County.  Marguerite D. Downing, Judge.  Affirmed and remanded with directions.

Anne E. Fragasso, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

In this juvenile dependency appeal, D.O. (father) challenges the juvenile court's jurisdictional findings and removal orders as to his nine-year-old daughter, E.C. (daughter). Father argues substantial evidence does not support any of the challenged orders. We conclude substantial evidence supports both the juvenile court's jurisdictional findings and dispositional removal order as to daughter. We also conclude substantial evidence supports the court's order made at the six-month review hearing to maintain daughter in her foster placement rather than return her to father's custody and care.

In addition, father argues we must reverse the challenged orders for the independent reason that the Los Angeles County Department of Children and Family Services (Department) and the juvenile court failed to comply with the inquiry mandates under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California law. Although the Department concedes error with respect to ICWA and related California law, we conclude the proper resolution is not to reverse the challenged orders, as father argues, but rather to remand with directions that the Department and the juvenile court correct their errors and comply with all mandates of ICWA and related California law while the underlying proceedings remain pending.

Accordingly, we affirm and remand with directions.

## BACKGROUND

### 1. The Family and Previous Child Welfare Involvement

L.C. (mother) is the mother of daughter and two younger children, daughter's half sister, S.M. (half sister), and half brother, A.M. (half brother). J.M. is the father of half sister and half brother. Although mother, half sister, and J.M. were involved in the proceedings below, they are not parties to this appeal.

Father and mother met in Connecticut, where they and the above-listed family members lived. In a parentage statement below, father indicated daughter lived with him in February and March 2021. When the underlying proceedings began, the Connecticut Department of Children and Families (Connecticut Department) had an open case concerning mother, J.M., and half brother, based on domestic violence between mother and J.M. Under a safety plan, daughter was placed in the care of father's mother (paternal grandmother), who also lived in Connecticut. On February 12, 2021, mother took daughter for an unmonitored visit and never returned daughter to paternal grandmother's care. The next month, in March 2021, and without telling father, mother moved to California with daughter and half sister.

Mother suffers from mental and emotional issues as well as multiple substance abuse disorders. Mother has made false allegations against J.M. and has verbally abused the children's maternal grandmother. Mother has refused mental health services. Although the children had not been removed officially from mother, a social worker with the Connecticut Department stated "the children were supposed to be living with a relative due to concerns about mother's substance abuse and mental

3

health." That social worker indicated "it was more than likely that the [Connecticut] Department was going to submit a petition to the Court requesting a removal order."

**2. Petition and Amended Petition**

In July 2021, the Department filed a Welfare and Institutions Code section 300 petition on behalf of daughter and half sister (petition).[1] The petition alleged four counts under subdivisions (a) and (b) of section 300. Specifically, the petition alleged daughter and half sister were at risk of harm due to mother and J.M.'s violent altercations (counts a-1 and b-1), mother's current and past substance abuse (count b-2), and mother's mental and emotional problems (count b-3). Father was not named in the petition.

None of the parties appeared for the initial hearing on the petition, at which time the juvenile court detained the children from their fathers and conditionally released them to mother. Soon after, however, the juvenile court removed and detained the children from mother as well. Daughter and half sister were placed with a foster family.

In early August 2021, a Department social worker spoke with father. Father explained paternal grandmother had temporary custody of daughter in Connecticut. Although he and paternal grandmother were not supposed to do so, in February 2021, they allowed mother to have an unmonitored visit with daughter. Mother never returned daughter to paternal grandmother. Instead, mother took daughter and half sister to Pennsylvania and then to California, where they stayed. Although father called law enforcement after mother left

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

4

Connecticut with daughter, he was told he " 'couldn't do much' " because he did not have paperwork demonstrating he was daughter's father.

In mid-August 2021, the Department filed an amended petition on behalf of daughter and half sister (amended petition). The amended petition included the original four counts as well as five new counts. The new counts alleged the children were at risk of harm because: J.M. physically abused the children and mother failed to protect the children from that physical abuse (counts a-2 and b-4), J.M. abused drugs and mother failed to protect the children from that substance abuse (count b-6), mother abducted the children from Connecticut and father failed to protect daughter from that abduction by allowing mother to have unmonitored access to daughter in violation of Connecticut court orders (count b-5), and father violated a Connecticut court order by allowing mother to have unmonitored access to daughter when he knew or should have known of mother's substance abuse, mental health issues, and ongoing domestic violence with J.M. (count b-7).

### 3. Adjudication and Disposition

Prior to adjudication, a Department social worker spoke with father and paternal grandmother. Father told the social worker he was aware of domestic violence between mother and J.M. but he did not know the details of it. He said mother told him many times that J.M. threatened to kill her. Father also stated he was aware of mother's alcohol and drug abuse and previous child welfare cases in Connecticut. He said, " 'It was an ongoing thing throughout the years of [daughter] from birth through now. Her mother always had prior DCF cases.' " Although father believed mother smoked marijuana and drank

5

alcohol daily, he indicated a feeling of helplessness. He stated, " 'These things come to me too late like what can I do about it? It's already happened. I can't do anything about it. . . . Every time I get information it's always late.' " Finally, father told the social worker he was not sure about mother's mental health. He believed mother took medication for depression. Although father was not living with mother when she was in Connecticut and in a relationship with J.M., father stated, " '[S]he seemed kind of off every time I talked to her. . . . Kind of paranoid basically.' " As of early August 2021, father had not spoken with daughter since mother left with her in February of that year. Father wanted to visit with daughter.

Father also spoke with the social worker about the Connecticut Department's most recent involvement with the family. Father stated the Connecticut Department became involved due to domestic violence between mother and J.M. Father said the Connecticut Department had not yet filed a case in court, but a safety plan had been developed under which daughter was to stay with paternal grandmother. Father explained daughter did not stay with him because he did not have a room for her.[2] Although father and paternal grandmother both indicated they were given shared custody of daughter, neither had documentation to support that. Father stated that, under the safety plan, mother was restricted to monitored visits with daughter. Nonetheless, on February 12, 2021, the day mother failed to return daughter, father and paternal grandmother had allowed mother to have an unmonitored visit

---

[2] This seems to conflict with father's parentage form filed with the juvenile court, which stated daughter lived with father during February and March 2021.

with daughter. Paternal grandmother told the social worker mother previously had taken daughter for visits without returning her. Paternal grandmother said, "[Mother] keeps taking her and not bringing her back and I had to go find her every time. She took them twice before." She noted she had raised concerns repeatedly with the Connecticut Department but she did not receive "much direction" and felt the Connecticut Department "was not doing anything to help."

On March 8, 2021, almost one month after mother failed to return daughter, father contacted law enforcement in Connecticut to report mother had taken daughter to California. When asked why he waited one month before making the report, father stated he and paternal grandmother "were giving [mother] the time and opportunity to do the right thing." Paternal grandmother reported she and father began to worry when mother did not return daughter on February 12, but they had been "in contact with [mother] and were giving her the opportunity to do the right thing and return [daughter]." Because neither father, paternal grandmother, nor the Connecticut Department could provide documentation of the stated custody arrangement, law enforcement was unable to take any action.

In August 2021, the Connecticut superior court issued an order declining to take jurisdiction over daughter. The order stated, as to daughter, "[T]he matter in the Superior Court for Juvenile Matters at Bridgeport, Connecticut was withdrawn on April 9, 2021."

In a September 2021 report for the court, the Department expressed its concerns about the family. As to father, the Department noted although he "reported concerns regarding the

mother's ongoing mental health issues, substance abuse and domestic violence with [J.M.]," "father failed to take appropriate action to protect his child [daughter] and reported that he did not take action because he does not like to involve Law Enforcement in such matters." The Department was also concerned that father "allowed the mother to take [daughter] and have unrestricted access to the child despite [the Connecticut Department] involvement and Court orders indicating that the child is to have monitored visits with the mother." The Department believed father did not appreciate the gravity of the situation.

A combined adjudication and disposition hearing was held on September 14, 2021. After hearing argument, the juvenile court sustained the amended petition in its entirety, including the two counts involving father's conduct (counts b-5 and b-7). Count b-5 alleged father failed to protect daughter because he allowed mother to have an unmonitored visit with daughter despite court orders requiring monitored visits only. Count b-7 alleged both that father violated a court order requiring mother to have monitored visits with daughter and that father knew or reasonably should have known of mother's substance abuse, mental health issues, and domestic violence with J.M.

The juvenile court declared daughter a dependent of the court under subdivisions (a) and (b) of section 300. The court removed daughter from mother's and father's custody and care. "[B]ased on the information from Connecticut," the court treated father as a previously custodial parent and found daughter's return to father's custody and care would be detrimental to daughter's safety, protection, physical and emotional well-being. The court's factual basis for removal from father was father

8

"previously failed to protect these children, in that he allowed the mother to take these children and then failed to file a missing persons report for 30 days, when the mother left Connecticut for California with the children."  The court ordered reunification services for both mother and father.  Father was ordered to participate in a parenting program and enroll in individual counseling.  Father was granted monitored visits.

**4.     Six-month Review Hearing**

Prior to the six-month review hearing, the Department submitted a few reports to the court.  By the end of June 2022, father had completed a 10-week parenting program.  Father stated he would receive counseling services once he had completed his parenting program.  By August 2022, however, father had not yet enrolled in individual counseling.  Father's visits with daughter were held by phone or on-line and were mostly consistent with no issues reported.

After multiple continuances, the six-month review hearing was held on August 10, 2022, eleven months after the adjudication and disposition hearing.  At the review hearing, the juvenile court held father's progress with his case plan had been substantial and mother's progress with her case plan had been unsubstantial.  The court found return of daughter and half sister "to the physical custody of their parents will create a substantial risk of detriment to their safety, protection, physical and emotional well-being."  The court continued reunification services for both father and mother and ordered daughter to remain in her placement.

**5.     Indian Child Welfare Act (ICWA)**

In July 2021, father filed his ICWA-020 form (parental notification of Indian status form), indicating none of the listed

9

choices applied to him. The following month, mother filed her ICWA-020 form, indicating she had no Indian ancestry as far as she knew.

In August 2021, the juvenile court held it "does not have reason to know that [daughter] is an Indian Child, as defined under ICWA, and does not order notice to any tribe or the BIA. Parents are to keep the Department, their Attorney and the Court aware of any new information relating to possible ICWA status."

**6.    Appeals**

Father timely appealed the juvenile court's jurisdictional findings and dispositional orders as well as the court's orders made at the August 10, 2022 review hearing. We granted father's request to consolidate the appeals.

**DISCUSSION**

**1.    Jurisdiction**

**a.    Justiciability**

As an initial matter, we address the justiciability of father's appeal. The Department argues father's challenge to jurisdiction is not justiciable because, in addition to the juvenile court's jurisdictional findings based on father's conduct, the court also based jurisdiction on mother and J.M.'s conduct, which findings have not been appealed. Thus, regardless of our decision on father's appeal, dependency jurisdiction will remain.

We agree dependency jurisdiction will remain regardless of the merits of father's appeal. (*In re X.S.* (2010) 190 Cal.App.4th 1154, 1161.) We disagree, however, that we cannot or should not address the merits of father's challenge to the jurisdictional findings as to him. The Department's position ignores our Supreme Court's recent opinion in which the court held, "[W]here

10

a jurisdictional finding 'serves as the basis for dispositional orders that are also challenged on appeal' [citation], the appeal is not moot." (*In re D.P.* (2023) 14 Cal.5th 266, 283.)  This is the case here.  Following its jurisdictional findings, the juvenile court removed daughter from father, ordered father to participate in reunification services, and maintained daughter's removal from father at the six-month review hearing, all of which orders father challenges on appeal.  Thus, although dependency jurisdiction would remain even if we reverse the juvenile court's jurisdictional findings as to father, father's appeal of the jurisdictional findings is not moot because those findings " 'serve[] as the basis for dispositional orders that are also challenged on appeal.' " (*Ibid.*)

### b.    Applicable Law

In this case, the juvenile court exercised its jurisdiction under subdivisions (a) and (b) of section 300.  Because the two counts pertaining to father were brought under subdivision (b), we focus on that subdivision.

Under section 300, subdivision (b), a juvenile court may assert dependency jurisdiction over a child when, among other things, "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [¶] (A) The failure or inability of the child's parent or guardian to adequately supervise or protect the child. [¶] (B) The willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left." (§ 300, subd. (b)(1)(A) & (B).)

"[S]ection 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction." (*In re I.J.* (2013) 56 Cal.4th 766, 773.)  "The

11

legislatively declared purpose of these provisions 'is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children *who are at risk of that harm*.' (§ 300.2, italics added.) 'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' " (*In re I.J.*, *supra*, at p. 773.) " 'The purpose of dependency proceedings is to prevent risk, not ignore it.' " (*Jonathan L. v. Superior Court* (2008) 165 Cal.App.4th 1074, 1104.)

### c. Standard of Review

We review the juvenile court's jurisdictional findings for substantial evidence. (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.) " 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings [and disposition order] of the trial court." ' " (*Ibid.*) In determining whether substantial evidence exists such that a reasonable trier of fact could find the order challenged on appeal is appropriate, we review the entire record in the light most favorable to the challenged order. (*Ibid.*)

"Substantial evidence is evidence that is 'reasonable, credible, and of solid value'; such that a reasonable trier of fact could make such findings." (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 199.) Substantial evidence " 'is not synonymous with any evidence. [Citations.] A decision supported by a mere scintilla of evidence need not be affirmed on appeal.' " (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 992.)

### d. Substantial evidence supports dependency jurisdiction based on father's conduct.

Father argues substantial evidence does not support the juvenile court's jurisdictional findings as to him because there was no Connecticut court order limiting mother to monitored visits with daughter and the evidence does not support a finding that father knew or should have known of mother's substance abuse, mental health issues, and domestic violence with J.M.

We conclude the evidence amply supports a finding that father knew of mother's substance abuse, mental health issues, and domestic violence with J.M. As noted above, father told a Department social worker he knew there was domestic violence between mother and J.M., that mother told him J.M. threatened to kill her, and that the Connecticut Department's recent involvement with the family was due to domestic violence between mother and J.M. Father also stated he believed mother took medication for depression and said she "seemed kind of off" and "paranoid." Finally, father reported he knew mother had substance abuse issues, including smoking marijuana and drinking alcohol daily, but felt helpless to do anything about it.

The evidence is less clear as to whether a Connecticut court had limited mother to monitored visits with daughter, but there is still sufficient evidence of such an order when we view the

13

record in the light most favorable to the court's order (as we must). Father, paternal grandmother, and the Connecticut Department all referenced a safety plan that had been in place to protect daughter and her half siblings. The Connecticut superior court also indicated there had been an open case involving daughter when it noted that case was dismissed in April 2021, after mother had absconded with daughter to California. That is substantial evidence. Regardless, whether by court order or Connecticut Department directive, the evidence is clear father believed mother's visits with daughter had to be monitored for daughter's safety. Yet, despite his own understanding, he and paternal grandmother allowed mother an unmonitored visit with daughter, which resulted in mother taking daughter out of state and, eventually, to California.

Despite knowing mother had left Connecticut with daughter, that mother suffered from serious mental health and substance abuse issues, and that the Connecticut Department had already been involved with his family, father took no action to locate and ensure daughter's safety until almost one month later, when he filed a report with his local law enforcement.

Based on the record before us, we conclude substantial evidence supports the juvenile court's jurisdictional findings as to father.

## 2. Removal

### a. Applicable Law and Standard of Review

When a child has been adjudged a dependent child within the meaning of section 300, the juvenile court "may limit the control to be exercised over the dependent child by any parent" if necessary to protect the child. (§ 361, subd. (a)(1).) Section 361, subdivision (c)(1) permits the juvenile court to order a child

14

removed from his or her parent if the court finds by clear and convincing evidence that the child is, or would be, at substantial risk of harm if returned home and there are no reasonable means by which the child can be protected without removal. " ' "The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child." ' " (*In re A.S.* (2011) 202 Cal.App.4th 237, 247, disapproved on another ground by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7 (*O.B.*).) In making its determination, the juvenile court may consider the parent's past conduct as well as present circumstances. (*In re A.S.*, at p. 247.)

We review the juvenile court's removal order under the substantial evidence standard of review. (*In re Nathan E.* (2021) 61 Cal.App.5th 114, 123.) "In reviewing for substantial evidence to support a dispositional order removing a child, we 'keep[ ] in mind that the [juvenile] court was required to make its order based on the higher standard of clear and convincing evidence.' " (*Ibid.*; *O.B.*, *supra*, 9 Cal.5th at pp. 1011–1012.)

> **b.** **Substantial evidence supports the juvenile court's removal order.**

Father argues substantial evidence does not support a finding that daughter would have been in danger if placed in father's care and any doubt about that should have been resolved in favor of placing daughter with father. We disagree.

The facts supporting jurisdiction also support the juvenile court's removal order. Additionally, the evidence shows father was unable to care for daughter in his home because there was no room for her there. Also, it appears daughter had lived with father, if at all, only in February and March 2021. Based on the

record before us, we conclude substantial evidence supports the juvenile court's removal order.

Finally, father relies on the First District's decision in *In re M.C.* (2023) 88 Cal.App.5th 137 (*M.C.*). We agree with the Department, however, that *M.C.* is unpersuasive as it is legally and factually distinct from the instant case. In *M.C.*, the Court of Appeal held the juvenile court erred when it failed to place the minor child with his father, who earlier had left the minor with the minor's drug-addicted mother. (*Id.* at p. 146.) In contrast to the instant case, at the time the father in *M.C.* left his child with the mother, there were no open child welfare proceedings concerning the family. Also, by the time of the disposition hearing in *M.C.*, the father there not only had prepared a safe plan of care for his child, but also had completed a parenting class identified by the Department. (*Id.* at p. 145.) The father's ex-wife also testified the father had been a good father for their three now-adult children, with no child welfare involvement. (*Id.* at pp. 144–145.) In contrast, here, the record does not reveal father had proposed a safe plan for daughter's return to his custody nor does it show father took quick action to alleviate the reasons for daughter's detention. Additionally, in *M.C.*, the court was reviewing the juvenile court's application of section 361.2, subdivision (a), as opposed to section 361, subdivision (c), which is at issue here. (*Id.* at p. 152.)

## 3. Six-month Review Hearing

### a. Applicable Law and Standard of Review

After a child is removed from parental custody, "the juvenile court must review the case at least once every six months." (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 249.) At the six-month review hearing, "the court shall order the

return of the child to the physical custody of their parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to their parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child."  (§ 366.21, subd. (e)(1).)  "At these review hearings there is a statutory presumption that the child will be returned to parental custody unless the court finds by a preponderance of the evidence that 'the return of the child would create a substantial risk of detriment to the physical or emotional well-being of the minor.' "  (*Cynthia D. v. Superior Court, supra,* 5 Cal.4th at p.  249.)

In making its decision, the juvenile court must consider "the efforts or progress, or both, demonstrated by the parent or legal guardian and the extent to which they availed themselves of services provided."  (§ 366.21, subd. (e)(1).)  "The failure of the parent or legal guardian to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental." (*Ibid.*)  "[T]he purpose of the reunification plan is 'to overcome the problem that led to removal in the first place.' "  (*In re Mary B.* (2013) 218 Cal.App.4th 1474, 1483.)

We review the juvenile court's risk of detriment finding for substantial evidence.  (*In re E.D.* (2013) 217 Cal.App.4th 960, 966.)

### b. Substantial evidence supports the juvenile court's risk of detriment finding.

Father claims the court erred when it refused to return daughter to his custody and care at the six-month review hearing.  Father claims there was no substantial evidence to

17

support a risk of detriment finding as to daughter if she was returned to father's care. We disagree.

As noted above, father's court-ordered case plan included a parenting program and individual counseling. By the time the six-month review hearing was held (which was close to one year after the juvenile court declared daughter a dependent of the court and ordered father's reunification case plan), father had completed a 10-week parenting program. He had not yet begun (let alone completed) the individual counseling portion of his case plan. Thus, although father was making progress and the juvenile court found his progress had been "substantial," substantive work remained for father to complete in order to address and alleviate the reasons for daughter's placement. In addition, it is unclear whether daughter had ever physically lived with father. Father's parentage form stated daughter recently had lived with him for two months, but elsewhere the record demonstrates daughter was living with paternal grandmother during that same time frame. In any event, the evidence indicates father never had physical custody of daughter for any substantial amount of time and, when she was ostensibly in his care, he allowed mother to take daughter for an unmonitored visit, which eventually concluded with daughter declared a dependent of the court in California. Finally, although father relies on *In re E.D.*, *supra*, 217 Cal.App.4th 960, we find that case factually distinct and, therefore, unpersuasive here.

Given the totality of the record before us, we conclude substantial evidence supports the juvenile court's risk of detriment finding made at the six-month review hearing.

18

## 4. ICWA

Father argues the Department and juvenile court failed to comply with the mandates of ICWA and related California law. In particular, father notes the Department failed to question known family members (such as paternal grandmother) with whom the Department had contact during the proceedings below. As a result of the deficient ICWA inquiries, father argues we must reverse the juvenile court's jurisdictional findings, dispositional orders, and orders made at the six-month review hearing. The Department concedes it and the juvenile court failed to comply with the inquiry mandates of ICWA and related California law. The Department does not concede, however, that these deficiencies require reversal in this case. We agree with the Department.

The conceded ICWA deficiencies do not require reversal of the findings and orders on review in this appeal. There is no indication of potential ICWA relationships and the underlying case has not concluded. As jurisdiction continues below, the juvenile court and the Department can resolve any doubts by conducting an adequate and appropriate ICWA investigation. Thus, we remand with directions that the juvenile court and the Department make the appropriate and adequate inquiries to proceed in compliance with ICWA and related California law.

## DISPOSITION

The juvenile court's September 14, 2021, jurisdictional findings and dispositional orders and the August 10, 2022 orders are affirmed.  The matter is remanded with directions that the juvenile court and the Los Angeles County Department of Children and Family Services comply with the Indian Child Welfare Act and related California law.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


HOFFSTADT, J.

20