Filed 10/9/25  In re Michael S. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re MICHAEL S. et al., Persons Coming Under the Juvenile Court Law.<br><br>_____<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>AZUCENA S.,<br><br>    Defendant and Appellant. | B341709<br><br>(Los Angeles County Super. Ct. No. 23CCJP01063) |

APPEAL from orders of the Superior Court of Los Angeles County, Nancy A. Ramirez, Judge.  Affirmed in part and dismissed in part.

Anuradha Khemka, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Azucena S. appeals from the juvenile court's disposition orders removing 12-year-old Michael S., 11-year-old Joseph S., and nine-year-old Aaron G. from her custody. She also appeals from the court's order removing two-year-old Zeak S. at the 12-month review hearing under Welfare and Institutions Code section 366.21, subdivision (f).[1] Azucena argues substantial evidence did not support the court's findings at the disposition hearing or the 12-month review hearing.

While this appeal was pending, the juvenile court returned Michael and Aaron to Azucena. Therefore, we dismiss Azucena's appeal from the orders regarding Michael and Aaron as moot. We affirm the juvenile court's orders regarding Joseph and Zeak because substantial evidence supported the court's findings.

---

[1] Statutory references are to the Welfare and Institutions Code.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Zeak Tests Positive for Methamphetamine at Birth, and the Juvenile Court Removes All Four Children from Azucena*

We described much of the factual and procedural background of these proceedings in Azucena's prior appeal. (See *In re Michael S.* (May 3, 2024, B330633) [nonpub. opn.] (*Michael S. I*).) When Azucena gave birth to Zeak in March 2023, they both tested positive for methamphetamine. Azucena denied using drugs and said she drank a cup of lemonade that tasted "funny" at a baby shower the previous day. Her friend told the social worker that she put methamphetamine in her cup at the baby shower and that Azucena must have drunk from the friend's cup. A few days later Azucena and Francisco S., Zeak's father, tested positive for methamphetamine.

The Los Angeles County Department of Children and Family Services filed a petition alleging two counts under section 300, subdivision (b), based on Azucena's substance abuse. In the first count the Department alleged that Zeak tested positive for amphetamine when he was born and that Azucena's substance abuse endangered Zeak's physical health and safety and placed him at risk of serious physical harm. In the second count the Department alleged that Azucena was a current abuser of amphetamine and methamphetamine, which rendered her unable to provide regular care for the children, and that Francisco failed to protect the children from Azucena's substance abuse. The Department also asserted counts under section 300, subdivision (b), based on Francisco's substance abuse and the criminal history of Jorge O. (Michael and Joseph's father), and under section 300, subdivision (j), based on prior dependency

3

jurisdiction over Zeak's half-siblings relating to Francisco's substance abuse.

At the detention hearing the juvenile court found the Department had made a prima facie showing the children were persons described by section 300 and ordered their continued detention. The court ordered monitored visitation and weekly drug testing for Azucena.

B.      *The Juvenile Court Sustains the Petition and Removes the Children, and We Reverse in Part*

At a combined jurisdiction and disposition hearing in June 2023 the juvenile court sustained the allegations in the petition and found the children were persons described by section 300, subdivisions (b) and (j). The court found not credible Azucena's account she accidentally ingested methamphetamine when she drank someone else's lemonade. The court declared the children dependent children of the juvenile court and removed them from Azucena and their fathers. The court ordered weekly drug testing, parenting classes, individual counseling, and unmonitored visitation for Azucena.

Azucena appealed from the court's jurisdiction findings and disposition orders. We affirmed the court's jurisdiction findings and disposition orders for Zeak, but reversed the jurisdiction findings and disposition orders for Michael, Joseph, and Aaron. We directed the juvenile court to enter new disposition orders for Michael, Joseph, and Aaron. (See *Michael S. I., supra*, B330633.)

4

C.     *The Juvenile Court Again Removes Michael, Joseph,*
       *and Aaron*

At the new disposition hearing in October 2024 the juvenile court acknowledged that Azucena had been testing negative for drugs and that she was almost finished with a substance abuse program.  The court stated, however, Azucena had relapsed at least twice, once in late 2023 and again in February 2024 while she was pregnant with her daughter, who was born in August 2024.  The court also stated that, though Azucena admitted to the social worker that she had a substance abuse problem, Azucena later denied making the statement.  The court stated that it was "concerned about whether she has gained insight and whether the progress she has made thus far is sufficient to ensure the children's safety" and that Azucena needed "more time to ensure that she is maintaining her sobriety and can safely parent now five children."

The court again declared Michael, Joseph, and Aaron dependent children of the juvenile court and removed them from Azucena.  The court ordered Azucena to undergo weekly drug testing and to participate in individual counseling and a full drug and alcohol program, but stated Azucena would receive credit for her current program once she completed it.  The court also ordered unmonitored visitation for Azucena in a public setting and ordered her to give the Department the date, time, and location of the visits so the social worker could "drop in and ensure that the children are safe."  Azucena timely appealed from the disposition orders removing Michael, Joseph, and Aaron.

D. *At the 12-month Review Hearing, the Juvenile Court Finds It Would Be Detrimental To Return Zeak to Azucena*

At the October 2024 12-month review hearing under section 366.21, subdivision (f), the juvenile court denied Azucena's request to return Zeak to her custody, finding that Azucena was "making good progress" but her compliance was "not substantial yet." The court stated Azucena needed "to make further progress in her insights with regard to substance abuse" and "continue to demonstrate her sobriety." The court found returning Zeak to Azucena would create a substantial risk of detriment. The court ordered unmonitored visitation for Azucena in a public setting and ordered her to give the Department the date, time, and location of the visits. Azucena timely appealed from the court's order removing Zeak.

E. *At the Six-month Review Hearing for Michael, Joseph, and Aaron, the Juvenile Court Returns Michael and Aaron to Azucena*

At the April 2025 six-month review hearing under section 366.21, subdivision (e), the juvenile court found Azucena's progress was substantial. The court returned Michael and Aaron (but not Joseph) to Azucena.[2]

---

[2] We granted the Department's request for judicial notice of the juvenile court's April 30, 2025 minute orders.

## DISCUSSION

A.  *Azucena's Appeal Regarding Michael and Aaron Is Moot*

"Juvenile dependency appeals raise unique mootness concerns because the parties have multiple opportunities to appeal orders even as the proceedings in the juvenile court proceed." (*In re N.S.* (2016) 245 Cal.App.4th 53, 59.)  The "'critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error.'" (*In re Rashad D.* (2021) 63 Cal.App.5th 156, 163; see *In re D.P.* (2023) 14 Cal.5th 266, 275; *In re Gael C.* (2023) 96 Cal.App.5th 220, 224.)  "For relief to be 'effective,' two requirements must be met.  First, the [appellant] must complain of an ongoing harm.  Second, the harm must be redressable or capable of being rectified by the outcome the [appellant] seeks." (*D.P.*, at p. 276; accord, *In re T.R.* (2024) 107 Cal.App.5th 206, 214.)  "'" When no effective relief can be granted, an appeal is moot and will be dismissed."'" (*In re J.A.* (2020) 47 Cal.App.5th 1036, 1050-1051.)

As discussed, at the six-month review hearing in April 2025 the juvenile court returned Michael and Aaron to Azucena.  Azucena does not deny her appeal from the court's disposition orders removing Michael and Aaron is moot.  We agree it is.  Because we cannot provide Azucena any effective relief, we dismiss her appeal from the disposition orders removing Michael and Aaron.

B.    *The Juvenile Court Did Not Err in Removing Joseph from Azucena*

1.    *Applicable Law and Standard of Review*

Section 361, subdivision (c)(1), provides:  "A dependent child shall not be taken from the physical custody of his or her parents . . . unless the juvenile court finds clear and convincing evidence" there "is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody."  (See *In re M.D.* (2023) 93 Cal.App.5th 836, 856; *In re I.R.* (2021) 61 Cal.App.5th 510, 520.)  "'The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate.  The focus of the statute is on averting harm to the child.'  [Citation.] The court may consider a parent's past conduct as well as present circumstances."  (*In re N.M.* (2011) 197 Cal.App.4th 159, 169-170.)

"We review a dispositional order removing a child from a parent for substantial evidence, '"keeping in mind that the trial court was required to make its order based on the higher standard of clear and convincing evidence."'  [Citation.] '[A]ppellate review of the sufficiency of the evidence in support of a finding requiring clear and convincing proof must account for the level of confidence this standard demands."'  (*In re M.V.* (2022) 78 Cal.App.5th 944, 960; see *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995.)  "'[W]hen reviewing a finding that a fact has been proved by clear and convincing evidence, the

8

question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true.'" (*B.D. v. Superior Court* (2025) 110 Cal.App.5th 1132, 1150; see *Conservatorship of O.B.*, at pp. 995-996.) "We view the record in the light most favorable to the prevailing party and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*M.V.*, at p. 960; see *Conservatorship of O.B.*, at p. 996.) The appellant has the burden to show ""there is no evidence of a sufficiently substantial nature" to support the dispositional removal order." (*In re L.O.* (2021) 67 Cal.App.5th 227, 245; see *In re E.E.* (2020) 49 Cal.App.5th 195, 206.)

2. *Substantial Evidence Supported the Juvenile Court's Order Removing Joseph*

Substantial evidence supported the juvenile court's finding by clear and convincing evidence that returning Joseph to Azucena would create a substantial danger to his physical health, safety, protection, or physical or emotional well-being. The juvenile court reasonably concluded it was highly probable Azucena had not overcome her issues with methamphetamine. Azucena used methamphetamine in March 2023 in the last days of her pregnancy with Zeak (and possibly a second time immediately after Zeak was born). In May 2023 she enrolled in an outpatient treatment program. Between June and August 2023 she tested negative five times but missed nine tests. In November 2023 Azucena again tested positive for methamphetamine. Azucena initially denied using drugs, but

9

later admitted to the social worker that she used methamphetamine in November 2023 because she was depressed and "stressed out" about "possibly losing her children." In December 2023 she left the outpatient program, entered and left two inpatient drug treatment programs, and reentered the outpatient program.

Substantial evidence also supported the juvenile court's finding Azucena had not developed sufficient insight into her substance abuse. In March 2024 Azucena admitted to the social worker that she had used methamphetamine two or three times in February 2024 and that she was avoiding drug testing for that reason.[3] Azucena told the social worker that she tested positive at her outpatient substance abuse program, that she asked her counselor not to tell the Department, and that she canceled visits with the children when she was under the influence of drugs. Azucena also told the social worker that she knew she was pregnant when she used methamphetamine in February 2024. She said "she usually uses meth to cope with her depression and loneliness."

In August 2024, however, Azucena recanted. She told the Department's investigator she tested positive when Zeak was born because her friend put something in her drink. She blamed her subsequent positive test on a "mix up" at the lab. She denied telling the social worker that she had relapsed and claimed the social worker "mixed up [her] words." She also denied she had a drug problem and said she enrolled in a treatment program because her attorney said she "had to do it in order to regain custody" of her children. Given the evidence of Azucena's

---

[3] Azucena missed weekly drug tests for six weeks between February 23, 2024 and April 9, 2024.

relapses, her drug use during pregnancy, and her denial of that drug use, the court could reasonably conclude it was highly probable Joseph would be at risk of harm if returned to Azucena. (See *In re K.B.* (2021) 59 Cal.App.5th 593, 601 [juvenile court could reasonably infer from the mother's "dissembling about . . . drug use" she was "trying to hide [an] ongoing drug addiction"]; *In re A.F.* (2016) 3 Cal.App.5th 283, 293 ["In light of [the] mother's failure to recognize the risks to which she was exposing the minor, there was no reason to believe the conditions would not persist should the minor remain in her home."]; *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge."].)

Azucena argues substantial evidence did not support the court's order removing Joseph from her because, though she "was admittedly inconsistent with her drug testing and did test positive for methamphetamines one time" in November 2023, she "addressed her use of methamphetamines" by enrolling in a treatment program in April 2024. Azucena asserts that, between April 25, 2024 and September 16, 2024, she tested negative for 22 consecutive weeks. The juvenile court, however, could reasonably find that, in light of Azucena's pattern of methamphetamine use, including during pregnancy, 22 weeks was not a long enough period of sobriety to show she would not relapse again. (See *In re H.B.* (2024) 106 Cal.App.5th 219, 242 ["Given father's decades-long history of substance abuse, and the fact he was in the early stages of recovery, the juvenile court could reasonably find it highly probable that father's four or so months of sobriety did not mean he was no longer at risk of relapsing."]; *In re J.C.* (2014) 233 Cal.App.4th 1, 7 [after the father's "years-long struggles with drug abuse, his seven months

11

of sobriety did not mean that he was no longer at risk of relapsing"]; *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531, fn. 9 ["It is the nature of addiction that one must be 'clean' for a much longer period than 120 days to show real reform."].)

Citing *In re M.V.*, *supra*, 78 Cal.App.5th 944, Azucena argues her "unwillingness to acknowledge having a 'drug problem' when speaking with the dependency investigator" in August 2024 was not "clear and convincing evidence of substantial danger to the children." The facts in *M.V.*, however, were very different. In that case "the sole cause of harm to the [c]hildren derived from domestic violence between [the parents], and the threat of that harm could be eliminated by dispositional orders requiring [the parents] to live and parent separately" (which the parents had done twice before "when doing so was necessary to maintain custody" of the children). (*Id.* at pp. 969, 968.) Indeed, the social worker testified: "'*I can't think of any safety risk right now placing [the children] with the father*'" (who was the victim of the domestic violence). (*Id.* at p. 961.) The court in *M.V.* stated that the child protective agency "was mostly troubled" by the father's "recanting" of his earlier statements about incidents of domestic violence "and his so-called 'lack of transparency'" and that, "[a]lthough troubling, the parents' 'lack of transparency' or subsequent denial of the events that led to dependency is not sufficient, by itself, to justify removal of the [c]hildren from either parent's custody." (*Id.* at pp. 961-962.) Here, in contrast, the juvenile court relied on Azucena's drug addiction and continuing drug use, even while pregnant, not merely her denial of drug use.

Azucena also argues there were reasonable means to protect Joseph without removing him, such as unannounced

12

visits by the social worker, continuing drug tests, or family counseling.  Azucena does not explain how unannounced visits or family counseling would address the danger caused by her methamphetamine use.  As for drug testing, by the time of the disposition hearing Azucena had been undergoing weekly drug testing for more than one year.  During that period, as discussed, she frequently missed drug tests and twice relapsed.  Although she had tested negative for 22 weeks, the juvenile court could reasonably conclude it was not safe to return Joseph to Azucena until she had tested negative for a longer period of time.  (See *In re A.F.*, *supra*, 3 Cal.App.5th at p. 293 ["Unannounced visits can only assess the situation and mother's sobriety at the time of the visit.  Substance abuse testing can only detect use after the fact—which would be after mother had already placed the minor at risk again."].)

C.     *The Juvenile Court Did Not Err in Continuing Zeak's Placement*

1.     *Applicable Law and Standard of Review*

At the 12-month permanency review hearing the juvenile court must return the child to the parent unless the court finds, by a preponderance of the evidence, returning the child "would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child."  (§ 366.21, subd. (f)(1); see *L.C. v. Superior Court* (2024) 98 Cal.App.5th 1021, 1033; *In re E.D.* (2013) 217 Cal.App.4th 960, 965.)  The Department has the burden of proving detriment.  (§ 366.21, subd. (f)(1); see *L.C.*, at p. 1033.)

13

"'In evaluating detriment, the juvenile court must consider the extent to which the parent participated in reunification services,'" as well as "'the efforts or progress the parent has made toward eliminating the conditions that led to the child's out-of-home placement.'" (*In re E.D.*, *supra*, 217 Cal.App.4th at p. 966.) "We review the juvenile court's finding of detriment for substantial evidence." (*Georgeanne G. v. Superior Court* (2020) 53 Cal.App.5th 856, 864; see *M.G. v. Superior Court* (2020) 46 Cal.App.5th 646, 660.) "Under that standard we inquire whether the evidence, contradicted or uncontradicted, supports the court's determination. We resolve all conflicts in support of the determination, indulge in all legitimate inferences to uphold the findings and may not substitute our deductions for those of the juvenile court." (*Georgeanne G.*, at p. 865; see *L.C. v. Superior Court*, *supra*, 98 Cal.App.5th at p. 1034.)

2.     *Substantial Evidence Supported the Juvenile Court's Finding That Returning Zeak to Azucena Would Be Detrimental to Zeak*

Substantial evidence supported the juvenile court's finding returning Zeak to Azucena would create a substantial danger to his physical health, safety, protection, or physical or emotional well-being. The same evidence that supported the court's order removing Joseph supported the court's finding that returning Zeak would be detrimental to him. As discussed, the juvenile court found Azucena used methamphetamine in November 2023 and while pregnant in February 2024. And though Azucena admitted to the social worker that she had used drugs, she later denied saying that and denied she had a drug problem. The danger to Zeak, who at the time of the hearing was only

14

19 months old, was even greater than the danger to Joseph, who was 10 years old at the time.  (See *In re N.R.* (2023) 15 Cal.5th 520, 559 ["a child's youth and maturity level can bear upon the care that the child may require and whether a parent's . . . substance abuse places the child at substantial risk of serious physical harm"].)  The court could reasonably conclude not enough time had elapsed since Azucena last used methamphetamine to entrust her with the care of such a young child.

## DISPOSITION

Azucena's appeal from the disposition orders regarding Michael and Aaron is dismissed.  The disposition order regarding Joseph and the order at the 12-month review hearing regarding Zeak are affirmed.

SEGAL, J.

We concur:

MARTINEZ, P. J.

STONE, J.